C–B KENWORTH, INC., a/k/a GMC Trucks of Portland, Plaintiff,

v.

GENERAL MOTORS CORP., Defendant.

Civ. No. 87–0250–P.

United States District Court, D. Maine.

March 25, 1988.

See also 675 F.Supp. 686.

George S. Isaacson, Martin I. Eisenstein, Lewiston, Me., for plaintiff.

Wendell G. Large, Portland, Me., Daniel L. Goldberg, Bingham, Dana & Gould, Boston, Mass., for defendant.

MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

GENE CARTER, District Judge.

### I. Introduction

Plaintiff C–B Kenworth is a truck dealership authorized to sell trucks manufactured and marketed by Defendant GMC. Plaintiff was originally authorized to sell GMC's full line of trucks—heavy-duty, medium-duty and light-duty—a total of 53 vehicle

models. On December 31, 1987, after Defendant had formed a heavy-duty truck joint venture with Volvo–White ("Volvo–GM"), Defendant terminated Plaintiff's heavy-duty truck addendum, that portion of Plaintiff's dealership agreement that entitled Plaintiff to sell and service GMC's heavy-duty trucks. Plaintiff filed this action seeking to recover for damages allegedly caused by that termination.

On October 28, 1987, Defendant moved to dismiss on all but one of the 13 counts in Plaintiff's Complaint.[1] For the reasons stated more fully herein, the Court grants in part and denies in part Defendant's motion.

### II. Analysis

Plaintiff's Amended Complaint[2] alleges breach of contract and violations of the federal Automobile Franchise Dealer's Act,[3] Maine's Motor Vehicle Dealer's Act and Unfair Trade Practices Act,[4] and the federal Robinson–Patman Act.[5] Defendant has not moved to dismiss Count 9, which alleges the Robinson–Patman Act violation. The court will address the remaining counts in turn.

### A. Federal Automobile Franchise Dealer's Act

Amended Counts 1 and 2 allege that Defendant violated the federal Automobile Franchise Dealer's Act (AFDA). That statute permits an automobile dealer to sue an automobile manufacturer for failure "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer." 15 U.S.C. § 1222. "Good faith" is defined as "the duty of each party to any franchise ... to act in a fair and equitable manner toward each other so as to guaran-

tee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party." 15 U.S.C. § 1221(e). The "coercion or intimidation must include a wrongful demand that would result in penalties or sanctions if not complied with." *H.D. Corp of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 990–991 (1st Cir.1986).

Plaintiff claims that GMC refused to give Plaintiff termination assistance unless Plaintiff released GMC from all legal claims arising from the termination of the heavy-duty truck addendum. Under the "termination assistance" program, GMC agrees to buy back all new, unsold vehicles and parts, and any tools and equipment used exclusively to service vehicles subject to termination. GMC guaranteed such assistance in its Dealer Agreement with C–B Kenworth, and is required by Maine law to provide it.

Plaintiff claims that GMC's demand for a release, and its subsequent refusal to provide termination assistance, constitutes the type of coercive conduct the federal AFDA prohibits. Defendant claims, in contrast, that it never coerced or intimidated Plaintiff or made wrongful demands, and that its alleged failure to abide by contract terms is not enough to make out a violation of the AFDA.

The parties have submitted for the record a copy of the Dealer Agreement, which outlines the termination assistance GMC offers to terminated dealers. The agreement requires that the dealer, in exchange for termination assistance, convey to GMC marketable title to repurchased vehicles, and satisfy all liens on vehicles, parts and equipment prior to repurchase. Nowhere does the agreement require the dealer to execute a release before receiving

---

1. Because both parties have submitted supplementary materials in support of and in opposition to Defendant's Motion, the Court treats it as a Motion for Summary Judgment, as provided in Fed.R.Civ.Pro. 12(b) and 56(b).

2. Plaintiff was permitted to amend its Complaint on March 7, 1988, to delete three antitrust counts, delete allegations against Volvo–GM, a

named Defendant that has been dismissed from the suit, and add specificity to Counts 1 and 2.

3. 15 U.S.C. § 1221 et seq.

4. 10 M.R.S.A. § 1171 et seq., and 5 M.R.S.A. § 207, respectively.

5. 15 U.S.C. § 13 et seq.

or becoming entitled to termination assistance.

Plaintiff has submitted for the record the letter, dated March 12, 1987, in which GMC informed Plaintiff that it had not been selected as a joint venture dealer, and requested that Plaintiff release "GMC Truck and General Motors Corporation from any and all claims related to the cancellation of the Heavy Truck Addendum," in consideration for termination assistance (Hicks' Affidavit, Exhibit 16). Plaintiff has submitted another letter, dated September 18, 1987, in which GMC informed Plaintiff that termination assistance would end on November 15, 1987, and that Plaintiff would not be entitled to receive assistance unless it "execute[s] necessary documents" by that time (Hicks' Affidavit, Exhibit 41). Finally, Plaintiff has sworn by affidavit that it has refused to execute a release, and has received no termination assistance to date.

■ The Court finds that the record creates a significant factual dispute over whether GMC demanded that Plaintiff execute a release of legal claims before receiving termination assistance, and whether such a demand, if made, rises to the level of coercion required to make out a violation of the federal AFDA. The Court therefore finds that summary judgment on Counts 1 and 2 is unwarranted.

## B. Maine Motor Vehicle Dealer's Act

Counts 3 through 8 allege that GMC's termination of Plaintiff's heavy-duty truck addendum violated Maine's Motor Vehicle Dealer's Act. That statute, much like its federal counterpart, permits motor vehicle dealers to sue manufacturers for certain enumerated "unfair methods of competition and unfair and deceptive practices." 10 M.R.S.A. § 1174.

Defendant argues, as a preliminary matter, that the Motor Vehicle Dealer's Act does not apply because the termination at issue here was not of an entire franchise, but of a portion of a franchise, or merely a product line. The act, Defendant argues, does not apply to the termination of a product line. Plaintiff claims, in contrast, that the addendum *is* a separate franchise, and

was negotiated and agreed upon as such, and that the act therefore applies.

■ This presents a factual issue that the Court cannot resolve on the documents submitted with this motion. The Court will address the remainder of the allegations in this motion as though the Act does apply, and will reserve decision on its applicability for the factfinder at trial.

Count 3 alleges that the termination violated 10 M.R.S.A. § 1174(1), which prohibits manufacturers from engaging "in any action which is arbitrary, in bad faith or unconscionable and which causes damage to any of said parties or to the public." Plaintiff claims, specifically, that the method by which GMC selected dealers for the joint venture, and chose not to offer a joint venture dealership to Plaintiff, was secretive and based on subjective factors, and failed to give Plaintiff an opportunity to be heard or to remedy perceived shortcomings; that GMC set the termination date at December 31, 1987, then cut off new orders on September 14, 1987, with only 10 days notice; that GMC sold heavy-duty trucks to one of Plaintiff's key customers at below Plaintiff's cost, then faulted Plaintiff for falling short in sales; and that the joint venture's heavy-duty truck marketing plan capitalizes on the goodwill and clientele that Plaintiff spent considerable money and time to establish, without compensating Plaintiff adequately. This conduct, Plaintiff claims, is arbitrary, in bad faith and unconscionable within the meaning of § 1174(1).

Defendant claims, in contrast, that its purported departure from the heavy-duty truck market gave it good cause to terminate Plaintiff's heavy-duty truck addendum, and that where good cause exists, the termination cannot be deemed arbitrary, in bad faith or unconscionable. Plaintiff alleges, however, that even if Defendant is deemed to have had good cause to terminate the heavy-duty truck addendum, Defendant is not entitled to carry out the termination in an arbitrary and unconscionable manner.

■ Plaintiff has submitted ample documentation to generate issues of fact as to the propriety of the termination and of the manner in which it was carried out. It has offered sufficient evidence to draw into question the process by which GMC selected dealers for the joint venture, and the fairness with which that process was applied to Plaintiff. It has submitted copies of the letter informing it that new orders would be cut off three months before the termination date. And it has generated a factual issue about GMC's sales of trucks to its customer, and the effect those sales had on its company's performance figures. The Court therefore finds summary judgment unwarranted as to Count 3.

Count 4 relies on the misconduct alleged in Count 3 to allege a violation of § 1174(3)(O), which makes it unlawful for a manufacturer to terminate a franchise unless the manufacturer satisfies statutory notice requirements, acts in good faith, and acts with good cause. Plaintiff claims that the misconduct alleged in Count 3 shows that Defendant did not terminate Plaintiff's heavy-duty truck addendum in good faith, as it is defined by statute.[6] Plaintiff claims, further, that the presence or absence of good faith is a factual question for the jury to decide. Plaintiff relies on the arguments made as to Counts 5 and 6 to show absence of good cause and failure to satisfy statutory notice requirements.

Count 5 alleges that Defendant terminated Plaintiff's heavy-duty truck addendum without good cause as it is defined by statute. Section 1174(3)(P)(4) states that "good cause" exists for the purposes of termination when "the manufacturer discontinues production or distribution of the franchise product." Defendant alleges that it discontinued production and distribution of heavy-duty trucks when it entered the joint venture, and therefore had good cause to terminate Plaintiff's heavy-duty truck addendum.

Plaintiff claims, however, that GMC continues to manufacture the Brigadier, the most popular model in GMC's heavy-duty truck line, and continues to make parts and do warranty work for heavy-duty trucks. Plaintiff claims, further, that GMC exercises significant control over the joint venture and cannot be said to have departed from the heavy-duty truck market.

Defendant does not dispute that it still manufactures the Brigadier. It claims, however, that all Brigadiers and parts produced are sold to and marketed by the joint venture, under the joint venture's name, and that GMC therefore has "left" the heavy-duty truck market. It claims, further, that it does not control the joint venture. It claims, on these grounds, that through the creation of the joint venture, GMC has discontinued production and distribution of heavy-duty trucks, and therefore had good cause to terminate Plaintiff's heavy-duty truck addendum.

■ Plaintiff has introduced sufficient evidentiary support to draw into question GMC's continued production of heavy-duty trucks, and thereby to raise a genuine factual issue about whether GMC had good cause, within the meaning of the statute, to terminate Plaintiff's heavy-duty truck addendum. Summary judgment is therefore inappropriate on Count 5.

Count 6 alleges that Defendant failed to satisfy statutory notice requirements for termination, violating § 1174(3)(R), which requires written notice, 90 days before termination, of the intention to terminate, the reasons for termination, and the effective date of termination.

Defendant claims that it gave the required notice on December 23, 1986. Plaintiff claims that the December 23, 1986 notice was insufficient. Plaintiff claims the notice did not express an intention to terminate, but said merely that the heavy-duty truck addendum would "expire" no later than December 31, 1987. It claims further that the letter "held the door open" for C–B Kenworth to continue on as a joint venture dealer, making termination uncertain. It claims that although it was

---

**6.** 10 M.R.S.A. § 1171(9–A) defines "good faith" as "honesty in fact and the observation of reasonable commercial standards of fair dealing in the trade as is defined and interpreted in the Uniform Commercial Code."

informed of the creation of the joint venture, it was never informed of the reasons that it was not chosen as a joint venture dealer, and therefore was never informed of the reasons for its termination. It claims, finally, that although the proposed termination date was December 31, 1987, Defendant cut off new orders on September 14, 1987, with only 10 days notice, violating the 90–day provision in the statute.

■ Again, Plaintiff has submitted documentation to support its claims that the notice it received was deficient. The Court finds that the determination of the statutory sufficiency of the notice given, which requires the application of this statutory provision to the given facts, is, like the determination of "good faith" and "good cause," a factual issue for the jury to decide. The Court therefore denies summary judgment as to Count 6. Further, because summary judgment is unwarranted on Counts 5 and 6, the good cause and statutory notice claims, it is likewise inappropriate on Count 4, of which good cause and statutory notice are elements.

■ In Count 7, Plaintiff alleges a violation of 10 M.R.S.A. § 1174(3)(S), which prohibits a manufacturer from terminating a franchise without "providing fair and reasonable compensation." The Court has determined, in its analysis of Counts 1 and 2, that Plaintiff has generated a genuine issue of fact about whether and under what conditions it was offered compensation for the termination, or "termination assistance." Because the same facts govern the outcome of this count, summary judgment is unwarranted for the reasons articulated in the Court's analysis of Counts 1 and 2.

Finally, Plaintiff claims in Count 8 that Defendant violated 10 M.R.S.A. § 1174(3)(K), which prohibits a manufacturer from competing with a dealer within the dealer's established market area. Plaintiff claims that in 1986, the GMC Chicago Truck Center, a subsidiary or division of GMC, sold 15 heavy-duty trucks to one of Plaintiff's biggest customers, for below Plaintiff's cost. Defendant does not dispute that the Chicago Truck Center sold the trucks to Plaintiff's customer. Defendant invokes an exception to § 1174(3)(K) that permits a manufacturer's subsidiary to compete with a dealer *if* the subsidiary is wholly-owned and has been selling vehicles at retail since before January, 1972.

■ Plaintiff claims that the Chicago Truck Center is a division of GMC, not a wholly-owned subsidiary. None of the documentation submitted on this motion conclusively establishes the nature of GMC's control over the Chicago Truck Center. Therefore, there exists a genuine issue as to whether the exception to § 1174(3)(K) applies, and therefore whether Defendant violated Maine law by selling trucks within Plaintiff's market area. Summary judgment is therefore inappropriate as to Count 8.

## C. Maine Unfair Trade Practices Act

■ Plaintiff has added to the prayers in Counts 3 through 8 claims that Defendant's alleged misconduct violates Maine's Unfair Trade Practices Act. That act creates a private right of action *only* for those who have purchased goods, services or property "primarily for personal, family or household purposes." 5 M.R.S.A. § 213(1). The act therefore does not apply to Plaintiff, and dismissal is justified as to those claims.

## D. Breach of Contract

In Count 10, Plaintiff claims that Defendant breached their Dealer Agreement by terminating the heavy-duty truck addendum for reasons other than those allowed under the agreement's express terms. Defendant claims, in contrast, that in the Dealer Agreement it expressly reserved the right to discontinue products, and granted Plaintiff only the right to sell trucks *marketed* by GMC. Because it had the right to stop making heavy-duty trucks, and because it no longer markets heavy-duty trucks, its termination of Plaintiff's right to sell heavy-duty trucks did not breach the agreement, Defendant claims.

■ After a thorough review of the Dealer Agreement's provisions, the Court

remains uncertain whether Defendant reserved the right to discontinue product *lines* as well as products, and whether Defendant was entitled to terminate portions of its dealer's franchises for reasons other than those specified in the agreement. Further, the Court has determined that genuine factual issues exist as to whether GMC actually did "discontinue" making heavy-duty trucks, and therefore it is unclear whether the contractual reservation of the right to discontinue products even applies.

The proper interpretation of ambiguous contract terms is a factual matter for the jury to determine. *Northeast Services Division v. Boston Edison Co.*, 822 F.2d 199, 202 (1st Cir.1987). *See also Portland Valve, Inc. v. Rockwood Systems*, 460 A.2d 1383 (Me.1983); *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976). Contract language is ambiguous where, as here, it is reasonably susceptible of different interpretations. *Lee v. Flintkote Co.*, 593 F.2d 1275, 1282 (D.C. Cir.1979). The Court thus finds that summary judgment is inappropriate on Plaintiff's breach of contract claim.

### III. Order

Accordingly, the Court ORDERS that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment be, and it is hereby, GRANTED as to the claims in Counts 3 through 8 of violations of Maine's Unfair Trade Practices Act, and those claims are hereby DISMISSED. Defendant's Motion is, in all other respects, hereby DENIED.