**GENERAL MOTORS CORPORATION, Plaintiff,**

v.

**GALLO GMC TRUCK SALES, INC., Defendants.**

Civ. A. No. 87–4869.

United States District Court, D. New Jersey.

April 24, 1989.

Michael S. Waters, Lois H. Goodman, Carpenter, Bennett & Morrissey, Newark, N.J., for plaintiff.

Richard S. Hyland, Ramiro M. Carbonell, Myers, Matteo, Rabil, Norcross & Landgraf, Cherry Hill, N.J., for defendants.

## OPINION

RODRIGUEZ, District Judge.

This matter comes before the court on cross-motions for summary judgment in a case involving the termination by plaintiff General Motors Corporation (hereinafter "GMC") of the heavy duty truck line of defendant Gallo GMC Truck Sales (hereinafter "Gallo"). The crucial issue in the case is whether an agreement between a manufacturer and a dealer authorizing the dealer to sell and service a specific class of trucks constitutes a separate franchise agreement. If so, the termination of the truck line would fall within the ambit of the New Jersey Franchise Practices Act, which provides that a franchiser may terminate or fail to renew a franchise only for good cause. See N.J.STAT.ANN. 56:10–1—56:10–15 (West 1989). Defendant Gallo has moved for partial summary judgment, alleging that GMC is liable for violating the New Jersey Franchise Practices Act (hereinafter "Franchise Act" or "Act"). GMC also has moved for summary judgment on all of Gallo's counterclaims. GMC asserts that the cancellation of the heavy duty addendum was not a termination of a franchise under the Act. For the reasons stated herein, this court grants Gallo's motion for summary judgment, finding that GMC is liable under the Act. In addition, the court denies GMC's motion for summary judgment.

## I.

Plaintiff GMC is a multi-national corporation engaged in the production and marketing of trucks through its GMC Truck Division under the nameplate "GMC Truck." Defendant Gallo has been a GMC Truck franchisee since 1976 and has sold GMC heavy duty trucks since 1981.

The agreement between GMC and Gallo is contained in a Dealer Sales and Service Agreement (hereinafter "dealer agreement"), which gives Gallo a non-exclusive right to buy GMC trucks, parts and accessories and permits Gallo to identify itself as an authorized GMC Truck dealer. The goods Gallo may purchase, sell or service under the dealer agreement are limited to those items identified in the agreement's "Motor Vehicle Addenda." Attached to Gallo's dealer agreement are three such addenda. One addendum authorizes Gallo to purchase from GMC certain "light duty" truck models, those models with a total weight of less than 1,400 pounds when fully loaded. A second addendum designates certain "medium duty" models, those with a fully loaded weight greater than 1,400 pounds but less than 33,000 pounds. A third addendum, acquired in 1981, authorizes Gallo to purchase from three "heavy duty" models, those with a total weight greater than 33,000 pounds fully loaded.

On August 15, 1986, GMC signed a memorandum of understanding with AB Volvo and its American subsidiaries (collectively "Volvo"), in which the parties agreed to enter into a joint venture, to be known as "Volvo–GM Heavy Truck Corporation" (hereinafter "Volvo GM"). According to the terms of that agreement, GMC would no longer market heavy duty trucks under the GMC Truck tradename, but would transfer certain operating assets and cash into the joint venture, and receive in return a 24% interest in Volvo GM and three seats on its ten-member board of directors. Thereafter, all GMC heavy duty trucks would be manufactured and marketed by Volvo GM under the trademark "White GMC."

On November 7, 1986, GMC notified all of its dealers that its heavy duty truck models would be discontinued. Also on that date, GMC renewed Gallo's heavy duty truck addendum, but advised Gallo that it would be cancelled no later than December 31, 1987.

Pursuant to the terms of the memorandum of understanding GMC and Volvo executed a stock purchase agreement on December 9, 1986. On December 23, 1986 GMC again notified Gallo that its heavy duty truck addendum would be cancelled on December 31, 1987.

In an apparent effort to maintain its heavy duty truck operations Gallo applied for a Volvo GM dealer agreement. Volvo GM denied Gallo's application and instead awarded its South Jersey area dealership to Jesco Volvo White, Inc. of Williamstown, N.J. (hereinafter "Jesco"). Gallo was notified of that decision on June 22, 1987.

On October 16, 1987, Gallo filed a letter of protest with the New Jersey Motor Vehicle Franchise Committee, pursuant to the Franchise Act, against GMC, Volvo GM and Jesco. *See* N.J.STAT.ANN. 56:10–19. All the defendants named in that action moved to dismiss the protest, claiming that the Motor Vehicle Franchise Committee lacked jurisdiction to adjudicate Gallo's

claims because the termination did not fall under the Act. By consent, Gallo voluntarily dismissed the protest action and reached a settlement agreement with Volvo GM and Jesco [1] whereby Gallo is permitted, until December 31, 1989, to provide warranty service and purchase parts for the heavy duty trucks Gallo had recently sold and for the trucks Gallo had in stock at the time its heavy duty addendum was cancelled.

On December 2, 1987, GMC filed the present action, seeking a declaratory judgment under 28 U.S.C. § 2001 that GMC's cancellation of Gallo's heavy duty truck addendum did not constitute a "termination" or "cancellation" of Gallo's GMC truck franchise within the New Jersey Franchise Practices Act. Gallo filed an amended answer and counterclaimed, alleging that GMC's actions did in fact violate the Act. Gallo also alleges breach of contract and fraudulent concealment on the part of GMC and seeks injunctive and compensatory relief.

On December 31, 1987, Gallo's heavy duty truck addendum was cancelled, and GMC ceased to manufacture heavy trucks, with one exception. Pursuant to an exclusive supply contract with Volvo GM, GMC agreed to continue manufacturing a version of the "Brigadier," a heavy duty truck model, for up to one year, and sell it to Volvo GM. By the terms of the agreement GMC would take orders for the Brigadier until August 1, 1988, and would cease production of heavy duty trucks altogether on December 16, 1988. On September 2, 1988, GMC telexed its dealers that formerly sold GMC heavy duty trucks, informing them that Brigadiers and two other GMC heavy duty truck models, the General and Astro, were available for sale and re-invoice to eligible dealers.

On September 26, 1988, Gallo filed a motion for partial summary judgment in its favor on count 3 of its counterclaim under the Franchise Act. Gallo alleges that since the termination of its heavy duty truck operations, it has been unable to obtain

1. In a stipulated settlement dated May 17, 1988, the parties agreed that the administrative proceeding would be dismissed with prejudice ex-

cept that GMC and Gallo would retain their rights to pursue the present action before the court.

GMC heavy duty trucks, parts or accessories, and has been unable to perform warranty work on behalf of GMC. On October 25, 1988, GMC filed a cross-motion for summary judgment in its favor, on its own complaint and on Counts 1 through 5 of Gallo's counterclaim. This court heard oral argument on November 29, 1988 and reserved decision.

## II. STANDARD FOR SUMMARY JUDGMENT

The entry of summary judgment is appropriate only when "there is no genuine issue of material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Whether a fact is indeed "material" is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If a disputed fact exists and under the controlling substantive law might affect the outcome of the suit, then entry of summary judgment is precluded. *Id.*

Summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (citations omitted).

The moving party bears the responsibility of informing the district court of the basis for its motion. *Id.* at 323, 106 S.Ct. at 2553. In addition, that party must identify those portions of the pleadings, discovery papers and affidavits (if any) which demonstrate that no genuine issue of material fact exists. *Id.* Once the moving party has satisfied these requirements, the burden then shifts to the nonmoving party to present affirmative evidence that a material fact is genuine. If the evidence is such that a reasonable jury might return a verdict in his favor, summary judgment will not be granted. *Anderson,* 477 U.S. at 248, 257, 106 S.Ct. at 2510, 2514.

## III. COUNT THREE

Defendant Gallo brought this motion for partial summary judgment on count 3 of its amended counterclaim, which alleges a violation of the New Jersey Franchise Practices Act. Gallo asserts that its heavy duty truck business was covered by one of three franchise agreements between itself and GMC, and that the existence of each franchise is dependent upon the combination of two documents, the dealer agreement and the Motor Vehicle Addenda for that specific line of trucks. Gallo contends that GMC's cancellation of its heavy duty truck addendum effectively terminated the heavy duty truck franchise, as the addendum is necessary to the existence of the franchise. Further, Gallo asserts that GMC's termination of that franchise agreement was not for good cause and is therefore a violation of the Franchise Act.

GMC contends that only one franchise agreement exists between itself and Gallo, and that it is contained entirely in the dealer agreement. According to GMC, however, the heavy duty truck addendum merely listed the heavy duty truck models which Gallo was licensed to sell. GMC asserts that the discontinuation of those GMC products did not affect the existence of Gallo's franchise, as the dealer agreement and two other Motor Vehicle Addenda remain in effect. Therefore, GMC claims, the Franchise Act was not violated.

A. *New Jersey Franchise Practice Act*

The substantive law controlling this issue is delineated in the Franchise Practices Act. A "franchise," as defined in the Act, is

a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise.

N.J.STAT.ANN. 56:10–3a. (West 1989). A "person" is defined as "a natural person, corporation, partnership, trust, or other entity." N.J.STAT.ANN. 56:10–3b.

In order to trigger the Act's protection, (1) the performance of the franchise must contemplate or require the franchisee to establish or maintain a place of business within the State of New Jersey; (2) gross sales of products or services between franchisor and franchisee must have exceeded $35,000.00 for the 12 months preceding the filing of any claim under the Act; and (3) more than 20% of the franchisee's gross sales must be derived from such franchise. *See* N.J.STAT.ANN. 56:10–4 (West 1989).

It is a violation of the Act for a franchisor to terminate, cancel or fail to renew a franchise without good cause. For the purposes of the Act, "good cause" is limited to failure by the franchisee substantially to comply with the requirements imposed upon him by the franchise. *See* N.J.STAT. ANN. 56:10–5 (West 1989). The courts of New Jersey have consistently given effect to the plain meaning of this provision. *See, e.g., Dunkin' Donuts of America v. Middletown Donut Corp.*, 100 N.J. 166, 178, 495 A.2d 66, 72 (1985); *Shell Oil Co. v. Marinello*, 63 N.J. 402, 307 A.2d 598 (1973), *cert. denied*, 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974).

The Act reflects the legislative concern over longstanding abuses in the franchise relationship. *Shell Oil Co. v. Marinello*, 63 N.J. at 409, 307 A.2d at 602. The legislature recognized the franchisor's superior bargaining position in the franchise relationship, and "the inevitable intertwining of the franchisee's livelihood with the franchise." *Amerada Hess Corp. v. Quinn*, 143 N.J.Super. 237, 253, 362 A.2d 1258, 1267 (Law Div.1976). Despite their common interest in the success of the franchise, the franchisor and the franchisee also have vastly divergent interests. As long as the franchisor benefits from the increased public exposure and distribution of its goods, it matters little to the franchisor whether a particular franchisee remains in business, as there will always be another franchisee available to take that place in the distribution network. *Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div.*, 190 N.J.Super. 153, 163, 462 A.2d 595, 600 (App.Div.1983). Once a franchisee has succeeded, through the expenditure of his own efforts and capital, to establish a local reputation for the franchise name, his franchise is vulnerable to termination. *Id.* It is the potential for abuse attendant upon an arbitrary and uncompensated termination of a franchise which the Franchise Practices Act was intended to address. *Id.* at 164, 462 A.2d at 601.

It is undisputed that Gallo operates as a franchisee of GMC. The issue in question is whether, as GMC claims, the franchise agreement is contained in the parties' dealer agreement, or whether, as Gallo asserts, Gallo operated under three separate franchise agreements, each embodied in the combination of the dealer agreement with a separate addendum. If the former is true, then the franchise is still in effect, and was not affected by GMC's withdrawal from the heavy duty truck market. If the latter is the case, however, GMC's cancellation of Gallo's heavy duty truck addendum constitutes a termination of one of those franchises.

### B. *The Franchise Agreement*

■ The dealer agreement between GMC and Gallo grants Gallo the non-exclusive right (1) to buy those vehicles identified in the Motor Vehicle Addendum, and (2) to identify itself as an authorized GMC Truck dealer. Each of the three Motor Vehicle Addenda to which the dealer agreement refers lists the specific truck models in that class which Gallo is authorized to sell.

Also attached to Gallo's dealer agreement is a "Notice of Primary Responsibility," which designates, for each of the three classes of truck listed in the addenda, Gallo's area of primary responsibility. Designated as Gallo's area of primary responsibility for light and medium duty trucks are the communities of Vineland and Rosehyn, in Cumberland County, New Jersey, and for heavy duty trucks, the counties of Atlantic, Cumberland, Cape May and Salem.

Clearly, the agreement between Gallo and GMC regarding the sale of heavy duty trucks is itself a franchise, as defined by the Franchise Practices Act, § 56:10–3a.

The agreement was a written arrangement whereby GMC licensed Gallo to identify itself as an authorized GMC Truck dealer. Furthermore, there existed under that agreement a community of interest in the marketing and servicing of GMC heavy duty trucks and in the sale of related parts and accessories. Not only did each party depend, at least in part, upon the other party's success in the marketplace, but in addition, there existed some element of control by GMC which indicated that Gallo's heavy duty truck dealership was part of the class that is protected by the Act. *See Neptune*, 190 N.J.Super. at 163–64, 462 A.2d at 601; *Colt Indus., Inc. v. Fidelco Pump & Compressor Corp.*, 844 F.2d 117, 120 (3d Cir.1988).

GMC does not deny the existence of a franchise relationship between itself and Gallo. GMC asserts, however, that there has always been but one franchise agreement, embodied in the dealer agreement, and that it was unaffected by the cancellation of the heavy duty truck addendum. Since Gallo continues to operate under an effective dealer agreement, GMC argues that Gallo retains the "license to use" GMC trademarks and that a "community of interest" continues to exist between Gallo and GMC in the marketing of GMC trucks.

Although the dealer agreement does expressly provide that Gallo has the license to use GMC's trademarks, it does not, standing alone, provide for a community of interest regarding the marketing of GMC trucks. The dealer agreement authorizes Gallo to "buy the new GMC Truck motor vehicles identified in the Motor Vehicle Addendum hereto and related Parts and Accessories." The dealer agreement itself, however, does not identify the heavy duty truck models that Gallo is authorized to sell. Those models are listed only in the heavy duty truck Motor Vehicle Addendum. Without that addendum, therefore, Gallo is not authorized to sell *any* GMC trucks. The existence of a franchise agreement in this case requires a co-existence of *both* a dealer agreement *and* a valid Motor Vehicle Addendum.

GMC argues that a franchise continues to exist between itself and Gallo despite the cancellation of Gallo's heavy duty truck addendum, because along with the dealer agreement Gallo retains two valid Motor Vehicle Addenda, one for light duty trucks and one for medium duty trucks.

GMC's conceptualization of the franchise agreement suggests that as long as there remains at least one valid Motor Vehicle addendum to accompany the dealer agreement, the community of interest thrives. In other words, one franchise is composed of one dealer agreement plus any number of valid Motor Vehicle Addenda.

The language of the dealer agreement, however, suggests a more rigid relationship between the two documents. The dealer agreement provides that a dealer has a non-exclusive right to buy those GMC trucks "identified in the Motor Vehicle Addendum hereto." The use of the singular noun "Addendum" indicates that the parties contemplated that one franchise consists of one dealer agreement plus one Motor Vehicle Addendum, and not any combination of addenda. Therefore, Gallo had three franchise agreements with GMC: a light duty truck franchise covered by the combination of the dealer agreement and the light duty truck addendum; a medium duty truck franchise covered by the dealer agreement combined with the medium duty truck addendum; and a heavy duty truck franchise agreement, contained in the combination of the dealer agreement and the heavy duty truck addendum.

Gallo's heavy duty truck franchise falls under the protection of the Franchise Act, as it satisfies the three requirements of § 56:10–4: (1) The franchise agreement requires Gallo to maintain a place of business in Vineland, New Jersey; (2) gross sales of heavy duty truck products between GMC and Gallo for the 12–month period preceding Gallo's counterclaim totaled approximately $2,022,821.00, exceeding the $35,000.00 required by the Act; and (3) approximately 31% of Gallo's gross sales were derived from its heavy duty franchise, exceeding the 20% required by the Act. *See* N.J.STAT.ANN. 56:10–4.

### C. *Termination of the Franchise*

Having determined that the heavy duty truck addendum incorporated into the dealer agreement constituted a separate franchise agreement between GMC and Gallo, this court holds that GMC's cancellation of Gallo's heavy duty truck addendum was a termination of that franchise under the Franchise Act. It is true that Gallo still enjoys effective light duty truck and medium duty truck franchise agreements, since Gallo's dealer agreement, light duty addendum and medium duty addendum remain in effect. However, GMC's cancellation of Gallo's heavy duty truck addendum extinguished Gallo's right to market GMC heavy duty trucks, thereby terminating Gallo's heavy duty truck franchise.

■ This Court also finds that GMC's termination of Gallo's heavy duty truck franchise lacked good cause, and is therefore a violation of § 56:10–5 of the Franchise Practices Act. The Act provides that the only "good cause" for such termination is the failure of the franchisee substantially to comply with the requirements of the franchise agreement. GMC does not assert anywhere in its pleadings or affidavits that Gallo has failed to abide by the terms of the franchise, but claims that the cancellation of the heavy duty truck addendum was precipitated by GMC's decision to withdraw from the heavy duty truck market. It is a violation of the Act, however, to cancel a franchise for any reason other than the franchisee's substantial breach, even if the franchisor acts in good faith and for a bona fide reason. *Westfield Centre Serv., Inc. v. Cities Serv. Oil Co.*, 86 N.J. 453, 469, 432 A.2d 48, 55 (1981).

In *Westfield,* a franchisor elected to dispose of a service station franchise in a state-wide effort to reverse a two-year trend of negative earnings in its retail gasoline division. The franchisor based its decision on a finding that a gasoline station at the franchisee's location was not "economically feasible." The Supreme Court of New Jersey held that since the franchisee had not breached the terms of the franchise agreement, the franchisor's termination of that franchise lacked good cause,

and was therefore in violation of the plain meaning of the Franchise Practices Act. 86 N.J. at 469, 432 A.2d at 57.

GMC argues that the Franchise Act was not intended to regulate the business affairs of franchisers by prohibiting terminations motivated by good faith responses to the laws of economics. GMC postulates that if under the Act a franchiser is forced to continue to do business with a franchise that it determines is "uneconomical," then the resulting "diseconomies" would cause a "misallocation of resources" and higher, "noncompetitive" prices for the franchisor's products. This result, GMC claims, would inevitably cause manufacturers, dealers and the public to suffer. In the instant case, however, Gallo has not requested injunctive relief to force GMC to continue operating in the heavy duty truck market; it has merely requested damages to compensate it for the losses caused by GMC's termination of its heavy duty truck franchise. The *Westfield* court considered the concerns expressed by GMC regarding the economical consequences of an award of money damages for violations of the Franchise Act, but concluded that

> [t]he economic effect of compensating the franchisee for the reasonable value of its business when balanced against the evil that the Legislature sought to eliminate is a reasonable accommodation of the rights of the franchisor and the general public in franchise arrangements.

86 N.J. at 469, 432 A.2d at 57 (footnote omitted).

This court's decision is consistent with the finding of the United States District Court for the District of New Jersey in *Frank's GMC Truck Center, Inc. v. GMC,* No. 87–4839 (D.N.J. Jan. 7, 1988), *rev'd on other grounds,* 847 F.2d 100 (3d Cir.1988). In a written transcript statement, supplementing its oral opinion granting a franchisee's request for a preliminary injunction against GMC, the court found that by cancelling the franchisee's heavy duty addendum, GMC had in fact terminated its heavy duty truck franchise, as defined in the Act. *Id.* at 2. The court recognized the difference between a termination made

in "good faith" and a termination for "good cause" as required by the Act. *Id.* Despite GMC's claim that it had terminated the franchise in good faith and for valid economic reasons, the court found that GMC had failed to demonstrate good cause for that termination. *Id.*

GMC's decision to withdraw from the heavy duty truck market has given rise to numerous actions nationwide, filed by dealers whose heavy duty truck businesses were similarly terminated. Several holdings from among those cases support this court's conclusion that the cancellation of Gallo's heavy duty truck addendum constitutes the termination of a franchise.

In *In re General Motors Corp. and Volvo White Corp.—Heavy Truck Dealers,* No. 8760 0812, slip op. (Dec. 17, 1982), the Department of State, Bureau of Professional and Occupational Affairs of the Commonwealth of Pennsylvania, rejected GMC's argument that the discontinuation of its heavy duty truck line was merely a cancellation of some of its products. Pennsylvania law defines "franchise" as

> the written agreement or contract between any new vehicle manufacturer or importer and any new vehicle dealer or distributor which purports to fix the legal rights and liabilities of parties to such agreement or contract, and pursuant to which the dealer purchases and resells the franchise product or leases or rents the dealership premises.

63 PA.STAT. § 818.2 (1983). GMC and Volvo White testified that the heavy duty truck industry is considered to be separate and distinct from the light and medium duty truck industries. The Board found that GMC's heavy duty truck market was different from the light and medium duty truck markets, and that in fact GMC has treated its heavy duty truck line distinctly. Refusing to place "the form of the dealer agreement over its substance, particularly as the form of a dealer agreement is controlled by the manufacturer," the Board found that there was nothing which would require a finding that the heavy duty arrangement was anything other than a franchise. *In re General Motors,* No. 8760 0812, slip op. at 17. However, because Pennsylvania's franchise statute, unlike the New Jersey act, recognizes an exception for the termination of a franchise for "good cause and in good faith," the Board found that GMC's actions were justified, and therefore not in violation of that act. *Id.* at 18. *See* 63 PA.STAT. § 818.9(c) (1983).

In *Mid–State Truck Serv., Inc. v. General Motors Corp.,* No. 87–C–995–S, slip op., 1988 WL 148432 (W.D.Wis. Mar. 28, 1988), a GMC truck dealership had operated under a dealership agreement similar to Gallo's, with addenda for light and medium duty trucks, and a heavy duty truck addendum which was cancelled when GMC entered into the joint venture with Volvo. Under the relevant statute governing motor vehicle dealers, WIS.STAT.ANN. § 218.01 (West 1982), the definition of a "franchise" is equivalent to that of a "dealership" as defined under the Wisconsin Fair Dealership Law. A dealership is defined as

> a contract or agreement either expressed or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a tradename, trademark, servicemark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

WIS.STAT.ANN. § 135.02(2) (West 1982). GMC argued, as it does in the instant case, that the dealer agreement and its addenda constituted only one franchise agreement, and that it had not terminated a separate heavy duty truck franchise, but had merely exercised its contractual right to discontinue any product at any time. The District Court for the Western District of Wisconsin held, however, that GMC's cancellation of Mid–State's heavy duty truck Motor Vehicle Addendum was the cancellation of a franchise to sell heavy-duty trucks. *Mid–State Truck Serv., Inc.,* No. 87–C–995–S, slip op. at 16. The principal factor on which the court based its decision was that

the Wisconsin act, like the New Jersey Franchise Practices Act, was designed to protect franchisees from "unfair treatment by the grantors of their franchises." *Id.* The court recognized that GMC, as the master of the dealer agreement under which its franchises operate, had attempted to avoid the restrictions of various franchise statutes by seeking to characterize its dealer agreements in a form which affords it maximum freedom when exercising business judgment. *Id.* at 16–17. However, since GMC had placed additional qualifications on its authorized dealers and assigned to them specific areas of responsibility, the court refused to permit GMC to avoid regulation under the Wisconsin act. *Id.* at 17.

In *Central GMC, Inc. v. General Motors Corp.*, No. R88–263, oral op. (D.Md. May 4, 1988), the United States District Court for the District of Maryland applied the franchise provision of Maryland's Transportation Code to GMC's cancellation of a dealer's heavy duty truck addendum. That provision defines a "franchise" as

> a written arrangement, whether or not for a definite period, in which a manufacturer, distributor, or factory branch, grants to a dealer or distributor a license or right to use a trade name, trademark, service mark, or related characteristic in the sale, leasing, or servicing of new vehicles.

*Id.* at 10 (quoting MD.TRANS.CODE ANN. § 11–125 (1986)). In a bench opinion the court, relying upon the persuasive precedent discussed above, held that "where, as here, a heavy-duty truck addendum is cancelled, with all product lines within it being withdrawn from the dealer, ... there is a termination of a franchise within the meaning of section 15–209 of Maryland's Transportation Article." *Id.* at 13. Section 15–209, like New Jersey's Franchise Act § 56:10–5, prohibits cancellation of a franchise, despite any term or provision of the franchise, unless the franchisee substantially breaches the franchise agreement and the franchiser provides sufficient notice. *Id.* at 13–14. *See* MD.TRANS.CODE ANN. § 15–209 (1986).

Contrary to this line of cases is the holding of the District Court for the Southern District of New York in *Arthur Glick Truck Sales, Inc. v. General Motors Corp.*, No. 88 Civ. 107, slip op., 1988 WL 42171 (S.D.N.Y. Apr. 28, 1988). In *Arthur Glick* the court expressed its fear that applying New York's franchise statute to regulate GMC's decision to discontinue producing and marketing heavy duty trucks would have a deleterious economic result and would perpetuate inefficiencies that would be detrimental to the interests of GMC's shareholders and employees. *Id.* at 9. Concluding that this result would be counter to the intent of the New York state legislature, the court characterized GMC's action as a product discontinuation, and not the termination of a franchise. *Id.* The court's classification of GMC's action thus removed it from the application of the state franchise statute. *Id.* This court finds the reasoning of *Arthur Glick* to be distinguishable. Clearly, it was not the intent of the New Jersey legislature to protect the business interests of the franchiser. The legislature refused to provide an exception in § 56:10–5 for franchise terminations made for "good faith" business reasons. From the express language of § 56:10–5 it is clear that the legislature intended that franchise agreements may only be terminated for good cause, and that good cause is restricted to the substantial breach by the franchisee of the terms of the agreement.

The district court's decision in *Arthur Glick* granting GMC summary judgment was subsequently reversed by the Second Circuit in *Arthur Glick Truck Sales Inc. v. General Motors Corp.*, 865 F.2d 494 (2d Cir.1989). The Second Circuit rejected the district court's purely economic analysis, noting that if that court had discussed the attributes of New York's franchise act, it might well have found that a community of interest did exist in the marketing of heavy duty trucks and related services. *Id.* at 497. More specifically, the court stated:

> Where a dealer has made an investment in parts and training service employees and where the line of trucks is functionally related to a distinct segment of the market, as heavy-duty trucks appear to

be, and where their sale constitutes a substantial part of the dealer's revenues, it may be that the dealer has been given a "franchise".

*Id.* Therefore, this court's determination that GMC's cancellation of Gallo's heavy duty truck addendum constituted a franchise termination is also consistent with the reasoning employed by the Second Circuit.

### D. *Commerce Clause*

■ GMC argues that the Franchise Practice Act, if applied to the cancellation of Gallo's heavy duty truck franchise, would violate the Commerce Clause of the United States Constitution. GMC reasons that such an application of the Act would force it either to continue manufacturing and marketing an unprofitable product line or to pay damages, resulting in an unjust and undue burden on interstate commerce.

The Commerce Clause provides that Congress shall have power "[t]o regulate commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. While the Commerce Clause is a limitation on the power of the states to regulate or burden interstate commerce, not every exercise of state power with some impact on interstate commerce is invalid. A state statute will be upheld if it "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental ... unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citing *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960)).

This court has held that GMC's cancellation of Gallo's heavy duty truck addendum amounts to a termination of Gallo's heavy duty truck franchise in violation of the Franchise Practices Act. GMC asserts that the cancellation of that franchise was the inevitable result of its decision to withdraw from the unprofitable national heavy duty truck market. Applying the Act to prohibit the termination of Gallo's franchise, GMC argues, would be equivalent to denying GMC the liberty to withdraw from the

heavy duty truck market in New Jersey, since under the Act GMC would be forced either to continue its heavy duty truck line or to pay damages. GMC asserts that by preventing it from withdrawing from the New Jersey heavy duty truck market in this manner, the Franchise Practices Act imposes a direct and excessive burden on interstate commerce.

In support of its argument, GMC cites several cases where courts expressed concern over the potential constitutional problems that would be presented if the New Jersey Franchise Act was used to enjoin a franchiser's decision to cease doing business in the state. *See, e.g., Westfield Centre Serv.*, 86 N.J. at 469, n. 4, 432 A.2d at 57, n. 4 ("If the franchisor is forced to permit the franchisee to continue to operate and the franchisor suffers an economic loss or cannot earn a fair return on its property, constitutional problems may arise."); *Consumers Oil Corp. v. Phillips Petroleum Co.*, 488 F.2d 816, 819 (3d Cir. 1973) ("an interpretation of the Franchise Practices Act as prohibiting [the franchisor] from discontinuing its operations throughout the State would precipitate substantial constitutional questions").

The constitutional questions with which the *Westfield* and *Consumers Oil* courts were concerned are not raised in the instant case. Gallo is not requesting injunctive relief to enjoin GMC's withdrawal from the heavy duty truck market. Merely, Gallo has requested damages under § 56:10–10 of the Act for compensation of losses incurred as a result of GMC's cancellation of Gallo's heavy duty truck franchise. Therefore, the application of the Act in the instant case does not require GMC to continue operating in a market that it claims has become unprofitable, nor does it prohibit GMC from discontinuing its operations throughout the state of New Jersey. The Act does not compel GMC to continue marketing heavy duty trucks in New Jersey despite its nationwide withdrawal from that market, nor does it require that any resources be retained or diverted solely for the benefit of franchisees in this state. Thus, GMC is free to withdraw from the

heavy duty truck market. However, since such a withdrawal requires GMC to breach its franchise agreement with Gallo, GMC must pay the damages necessary to compensate Gallo for the losses suffered as a result of that breach.

This court is not persuaded by GMC's claim that an award of damages under the Act would unduly regulate or burden interstate commerce. The New Jersey legislature intended that franchisees who comply with the terms of their respective franchise agreements should be compensated for the damages caused by the termination of those agreements. While the franchisor is free to withdraw from a particular market, it must nevertheless compensate franchisees whose agreements are terminated without good cause as a result of that withdrawal. The resulting burden on interstate commerce, if any, is incidental. This court therefore holds that the New Jersey Franchise Practices Act, insofar as it requires franchisors to compensate franchisees for the losses caused by terminations that lack good cause, does not impose an excessive burden on interstate commerce and therefore does not violate the commerce clause.

### E. Federal Preemption of Franchise Practices Act

■ GMC argues that if the Franchise Practices Act is applied to the termination of Gallo's franchise despite GMC's claim that such termination was the result of its good faith decision to withdraw from the heavy duty truck market, then the Act is preempted by the federal Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225.

Federal preemption arises out of the supremacy clause of the Constitution, which provides, in pertinent part, that the laws of the United States are the law of the land, notwithstanding any state law to the contrary. U.S. CONST. art. 6, cl. 2. Generally, state authority can be preempted by federal law in three ways. *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 185 (3d Cir.1986). First, Congress may preempt state law by way of an express statement. *Jones v. Rath Packing Co.*, 430 U.S. 519,

525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Second, in the absence of such an express statement, a court may determine that Congress intended to occupy an entire field of regulation, leaving the states no room to supplement federal law. *Fidelity Federal Savings & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Third, Congress may preempt state law "to the extent that it actually conflicts with federal law." *Pacific Gas & Elec. Co. v. Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). Such a conflict exists when compliance with both the federal law and the state law is physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–45, 83 S.Ct. 1210, 1217–19, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Congressional intent to preempt state law is not to be "lightly presumed." *California Federal Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). "Proper respect ... for the independent sovereignty of the several States requires that federal supremacy be invoked only where it is clear that Congress so intended." *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 273 (3d Cir.1984). Therefore, statutes should be construed to avoid preemption "absent an unmistakable indication to the contrary." *Id.*

The Automobile Dealers' Day in Court Act (hereinafter "ADDCA") provides that an automobile dealer may bring suit against any automobile manufacturer who fails to exercise good faith in terminating, cancelling or not renewing the dealer's franchise. 15 U.S.C. § 1222. The Act also provides that in any such suit the manufacturer may assert in defense the failure of the dealer to act in good faith. *Id.* The policy underlying the ADDCA is to balance the unequal bargaining power between automobile manufacturers and dealers and

to curtail the abuses resulting therefrom. *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.*, 533 F.2d 510, 515 (10th Cir. 1976).

Congress has not expressly stated an intent that the ADDCA preempt state Franchise Practices Acts. In fact, the ADDCA expressly provides that it shall not invalidate any state law "except insofar as there is a direct conflict between an express provision of [the ADDCA] and an express provision of State law which cannot be reconciled." 15 U.S.C. § 1225. Clearly there is no such conflict between the ADDCA and the New Jersey Franchise Act. The Franchise Practices Act provides a cause of action for franchisees whose franchises are terminated by any franchisor without good cause. N.J.STAT. ANN. 56:10–5. A franchisor named in any action under the Franchise Act may assert the defense that the termination was made with good cause. Thus, because there is no direct conflict between the express provisions of the ADDCA and those of the Franchise Act, Congress has not expressly preempted the Franchise Act.

Neither is there any indication that Congress intended to occupy the entire field of regulating the relationship between manufacturers and their dealers. The ADDCA applies solely to automobile manufacturers and dealers. Clearly, the Act is not intended to encompass the entire field of regulating all franchise relationships, which is the focus of the New Jersey Franchise Act.

Finally, there is no actual conflict between the Franchise Act and the ADDCA. GMC claims that while the ADDCA permits good faith franchise terminations, the Franchise Act as applied in this case penalizes GMC's good faith, nondiscriminatory withdrawal from the heavy duty truck market.[2] Assuming, *arguendo*, GMC's actions were taken in good faith and thus, would not violate ADDCA, the defense of federal preemption is not applicable here. The ADDCA protects automobile dealers from franchise terminations that lack good faith.

The Franchise Act protects franchisees from franchise terminations that lack good cause. While "good faith" and "good cause" connote two separate meanings, each act furthers the Congressional purpose behind the federal act of balancing unequal bargaining power and eliminating abuse. Consistent with the policy of the federal act, the Franchise Act provides an even higher degree of protection for franchisees than that afforded dealers by the ADDCA. The Franchise Act would implicate a franchiser who claims to have terminated a franchise agreement in "good faith", but who cannot justify such terminations by showing good cause for its actions.

This court is not persuaded by GMC's assertion that in providing this higher degree of protection the Franchise Act conflicts with the ADDCA because it does not allow the good faith exception for franchise terminations permitted under the ADDCA. While the state's protection of the rights of franchisees is broader, it is not contrary to the policy underlying the federal act. GMC's argument might have some merit if the ADDCA created in automobile manufacturers like GMC an affirmative right to terminate any franchise for any reason. In the instant case, however, the ADDCA merely prohibits bad faith franchise terminations by motor vehicle manufacturers, and enables manufacturers named in an ADDCA action to raise the dealer's bad faith as a defense. The Franchise Act provides that a franchiser may terminate any franchise, as long as it is done for good cause. Thus, there is no actual conflict between the Franchise Act and the ADDCA.

Plaintiff has failed to cite any case that reads the supremacy clause as broadly as it would have this court apply it. Accordingly, this court holds that the Franchise Practices Act is not preempted by the Automobile Dealers' Day in Court Act.

---

2. Gallo argues that GMC's termination was not in good faith and points to GMC's 24% ownership in Volvo–GM trading under the nameplate "White–GMC." This court will not decide the issue of whether GMC's termination of Gallo's franchise was motivated by good faith, as it is immaterial to the disposition of the issues before the court.

## III. COUNT ONE

Gallo has voluntarily withdrawn its request for a temporary restraining order enjoining GMC from cancelling Gallo's heavy duty truck franchise and from revoking Gallo's warranty, service and parts privileges. Count I of Gallo's counterclaim is therefore dismissed as moot.

## IV. COUNT TWO

Gallo's claim for compensatory damages for the losses incurred as a result of GMC's termination of its heavy duty truck franchise is merged into its claim under Count 3 for damages under the Franchise Practice Act. GMC's motion for summary judgment on this count is therefore denied.

## V. COUNT FOUR

■ A district court may enter summary judgment only when it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." However, the disposition of a summary judgment motion is "reserved to the sound discretion of the trial judge, who may reasonably deny such a motion when inquiry into the facts to clarify the application of the law is deemed appropriate." *United States v. Bachman,* 601 F.Supp. 1537, 1540 (E.D. Wis.1985). Additionally, this court notes that the timing of the summary judgment motion may also influence the court to exercise its discretion under Rule 56 and refuse to grant summary judgment because it feels that further development of the case is needed in order to be able to reach its decision. In the present case counsel for GMC and Gallo agreed to suspend all discovery in order to allow the parties to file cross motions for summary judgment on the Franchise Practices Act claim in count 3 of Gallo's counterclaim. Considering the relative lack of discovery performed thus far on these issues, this court believes that the proper course is to deny GMC's motion for summary judgment on counts 4 and 5 in order to permit clarification of the factual allegations. For this reason and for the reasons that follow,

GMC's motion for summary judgment on these counts is denied.

In count 4, Gallo alleges that GMC's termination of Gallo's heavy duty truck franchise constituted a breach of the franchise agreement between the two parties. In its motion for summary judgment on this count GMC argues that it did not breach that agreement, because (1) the dealer agreement expressly provides that GMC may discontinue any product at any time, and (2) the heavy duty truck Motor Vehicle Addendum expressly provides that it is valid only unless it is cancelled or until it is superseded. GMC claims that as a matter of law, its termination of the heavy duty truck addendum was within the terms of the agreement and therefore not a breach. With respect to GMC's first argument, the court has determined that GMC has terminated the franchise as opposed to having merely cancelled a product line. With respect to the second argument, this court find that genuine issues of material fact exist as to whether GMC actually withdrew from the heavy duty truck market. GMC's motion for summary judgment on this issue is therefore denied.

## VI. COUNT FIVE

GMC seeks summary judgment in its favor on Gallo's claim that it fraudulently induced Gallo to invest in substantial renovations to its physical facilities. Gallo alleges that GMC knew of Gallo's plan to perform such renovations and either agreed or acquiesced thereto, without revealing to Gallo its intention to discontinue marketing heavy duty trucks and enter into the joint venture with Volvo. Having relied on these alleged misrepresentations, Gallo claims that it invested in substantial improvements which were rendered useless by the termination of its heavy duty truck franchise.

This court finds that Gallo has properly alleged the elements of fraudulent inducement and that it has presented issues of material fact sufficient to make resolution of this claim by summary judgment inappropriate. Among the factual issues that have yet to be resolved are the issues of

whether GMC's failure to inform Gallo of certain developments in its negotiations with Volvo constituted concealment; whether such concealment, if any occurred, or any misrepresentation by GMC executives, if any were made, was accompanied by an intent to induce reliance thereupon; and whether any reliance by Gallo was reasonable. For this reason, GMC's motion for summary judgment on count 5 of Gallo's counterclaim is denied.

## CONCLUSION

The heavy duty truck franchise between GMC and Gallo consisted of a dealer agreement combined with a heavy duty truck motor vehicle addendum. GMC's cancellation of that addendum constitutes a termination of Gallo's heavy duty truck franchise. As GMC's termination of that franchise lacked good cause, it was in violation of the New Jersey Franchise Practices Act, N.J.STAT.ANN. 56:10–5. Gallo's motion for summary judgment on Count 3 of its complaint is therefore granted. GMC's motion on count 3 for summary judgment is denied.

In addition, for the reasons set forth above, GMC's motion for summary judgment on count 1 is *DENIED* as moot and on count 2, 4 and 5 is *DENIED*. An appropriate order will be entered.

## ORDER

For the reaons set forth in this court's opinion filed even date;

IT IS on this 24th day of April, 1989, ORDERED that defendant's motion for summary judgment on count 3 of its counterclaim is *GRANTED;* and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on count 3 of defendant's counterclaim is *DENIED WITH PREJUDICE;* and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on count 1 of defendant's counterclaim is *DENIED AS MOOT;* and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on count 2 of defendant's counterclaim is *DENIED;* and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on count 4 and count 5 of defendant's counterclaim is *DENIED WITHOUT PREJUDICE;* and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment on its complaint for declaratory judgment is *DENIED WITH PREJUDICE.*