724 F.Supp. 1364 (1989)
COBLENTZ GMC/FREIGHTLINER, INC., Plaintiff,
v.
GENERAL MOTORS CORPORATION, et al., Defendants.
Civ. A. No. 87-T-1434-N.
United States District Court, M.D. Alabama, N.D.
June 9, 1989.
*1365 *1366 Robert E. Sasser, Dorothy W. Littleton and John Alley, Webb, Crumpton, McGregor, Sasser, Davis & Alley, Montgomery, Ala., for plaintiff.
George H. Wakefield, Montgomery, Ala., for nonparty Henderson Truck on 2/24/89 M/Quash, etc.
M.R. Nachman, Jr., Balch & Bingham, Montgomery, Ala., for Volvo GM Heavy Truck Corp., Aktiebolaget Volvo and Volvo Lastvagnar AB.
Charles L. Robinson, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., Burton L. Ansell, Legal Staff, General Motors Corp., Detroit, Mich., and Daniel L. Goldberg, Andrea Maislen, John R. Snyder and William Berkowitz, Bingham, Dana & Gould, Boston, Mass., for Gen. Motors Corp. and GMC Truck Operation, etc.
James W. Gewin, Bradley, Arant, Rose & White, Birmingham, Ala., for Volvo White Truck Corp.

ORDER
MYRON H. THOMPSON, District Judge.
Plaintiff Coblentz GMC/Freightliner, Inc. has brought this lawsuit against a number of defendants, including General Motors Corporation (GMC) and two Swedish corporations, charging that the termination of its dealership for GMC heavy trucks violated both federal and state law. This is one of many lawsuits across the nation brought by heavy truck dealers in the wake of a recent joint venture between GMC and several related Volvo companies for the production and sale of heavy trucks.[1] This cause is now before the court on the recommendation of the United *1367 States magistrate that motions to quash service of process and to dismiss for lack of personal jurisdiction filed by the two Swedish defendants, Aktiebolaget Volvo and Volvo Lastvagnar AB of Sweden, should be granted. Coblentz has filed objections to this recommendation and the court has received additional evidence bearing on the motions. For the reasons that follow, the court concludes that the magistrate's recommendation should not be accepted and that the Swedish defendants' motions should be denied.

I.
In 1985, Coblentz entered into a dealership with GMC for the sale of heavy trucks.[2] A year later, in 1986, GMC and several related Volvo companies formed a new joint venture company for the production and sale of these trucks. As part of the agreement to create this joint venture, both GMC and the Volvo company that had previously engaged in the production of heavy trucks in the American market were to terminate all of their existing heavy truck dealerships in the United States. GMC and the Volvo companies also agreed that the new company would then select its own dealers, mainly though not exclusively from the pool of former GMC and Volvo heavy truck dealers. The new company, however, selected fewer than the number of dealers in the pool, with the result that some former dealers did not receive new dealerships. Apparently anticipating this at the time they entered into the agreement with GMC, the Volvo companies established a fund to finance litigation resulting from the dealership terminations. One of the dealerships which was terminated by GMC and which did not receive a new dealership was Coblentz's.
Coblentz has brought this lawsuit in an Alabama federal court against the joint venture company[3] and its creators  that is, GMC and the Volvo Companies  challenging that termination.[4] Coblentz charges that two of the Volvo companies, the Swedish defendants, intentionally interfered with its business relations by inducing GMC to sever its dealership in Montgomery, Alabama. In so doing, according to Coblentz, the Swedish defendants damaged Coblentz's relationship both with GMC and with its Alabama customers.[5] Subject matter jurisdiction as to the Swedish defendants is based on diversity of citizenship. 28 U.S.C.A. § 1332.[6]
As stated, the Swedish defendants have moved to dismiss, asserting improper service of process and lack of personal jurisdiction. The magistrate issued his recommendation determining that this court *1368 lacked personal jurisdiction over the Swedish defendants and, given this conclusion, that he need not reach the service of process issue.

II.
When a nonresident defendant in a diversity case challenges personal jurisdiction, as the Swedish defendants do here, the plaintiff has the burdens of establishing that personal jurisdiction over the defendant comports with the forum state's long-arm provision and with the requirements of the due process clause of the fourteenth amendment. Williams Electric Co. v. Honeywell, Inc., 854 F.2d 389, 391 (11th Cir.1988). Since Alabama's long-arm provision, Ala.R.Civ.P. 4.2(a)(2), authorizes the assertion of personal jurisdiction to the limits of federal due process, these two burdens collapse into the one issue of whether personal jurisdiction over the defendant meets the requirements of due process. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir.1988); Brock v. Hutto, 617 F.Supp. 623, 629 (M.D.Ala.1985).
Due process requires, first, that the defendant have "certain minimum contacts" with the forum state and, second, that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Both conditions must be satisfied to establish personal jurisdiction over a defendant.

A.
The minimum contacts prong of the International Shoe test puts a defendant on notice that it should reasonably anticipate being sued in a state as a result of these contacts. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Because a defendant might reasonably anticipate suit in a specific state for a variety of reasons, the minimum contacts analysis is more easily stated than applied.
The magistrate and the Swedish defendants correctly recognize that "foreseeability" of an effect in the forum state without more, such as evidence that the defendant knowingly directed its actions toward that state, is not sufficient to establish minimum contacts under a constitutional due process analysis. In World-Wide Volkswagen, plaintiffs purchased an automobile from a retail dealer in New York and later drove to Oklahoma, where they were involved in an accident. They brought a products liability action in Oklahoma against several defendants, including the New York dealer and a New York regional distributor. To the plaintiffs' contention that the New York defendants could have foreseen an injury of the sort they suffered in Oklahoma because of the tendency of individuals to drive automobiles into other states, the Supreme Court responded that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State." Id. The unilateral activity of persons who claim some relationship with the nonresident defendant, the Court continued, cannot alone satisfy the minimum contacts requirement. Id. That requirement must be met through "the defendant's conduct and connection with the forum State [which] are such that he should reasonably anticipate being haled into court there." Id.
However, when a defendant intentionally takes some action with the knowledge that the result will be harm to a specific victim in another state, the picture involves more than mere foreseeability or the likelihood that fortuitous and undirected conduct will have an effect in that state. When the conduct is intentional and is directed at a victim in another state, the defendant may be held to have expected its conduct to have an effect in that state, and further to have expected that the victim will bring suit for redress there. The leading case on this strain of jurisdictional due process is Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).
In Calder, the Florida defendants allegedly wrote, but did not publish, a libelous article in a magazine that was distributed *1369 in California, the state in which the libeled plaintiff lived and worked. The Supreme Court held that the Florida defendants should reasonably have anticipated a suit in California arising from their conduct, and that California courts therefore had jurisdiction over these defendants for such an action. In rejecting the Florida defendants' arguments that the plaintiff's injury was "merely foreseeable" in California, as was the injury of the World-Wide Volkswagen plaintiffs in Oklahoma, the Court drew an important distinction between torts that are intentional and targeted, and those that are merely negligent and untargeted.
.... Petitioners liken themselves to a welder employed in Florida who works on a boiler which subsequently explodes in California. Cases which hold that jurisdiction will be proper over the manufacturer ... should not be applied to the welder who has no control over and derives no direct benefit from his employer's sales in that distant State.
Petitioner's analogy does not wash. Whatever the status of their hypothetical welder, petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. ... An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.
Id. at 789-90, 104 S.Ct. at 1487. In other words, when the origin of a deliberate, nonfortuitous tort is in one state (or, as in the case at hand, in a foreign country) and the intended injury to a recognized victim is in another state, the tortfeasor has affirmatively established minimum contacts with the state in which the injury occurred, if the tortfeasor knew at the time it committed the alleged tort that the victim would be injured in that state.[7] "Under these circumstances," as the Court in Calder explained, "[defendants] must `reasonably *1370 anticipate being haled into court there' to answer" for the consequences of their conduct. 465 U.S. at 790, 104 S.Ct. at 1487 (citations omitted). Cf. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) ("`fair warning' requirement [in due process analysis] is satisfied if the defendant has `purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that `arise out of or relate to' those activities") (citations omitted); Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) ("`substantial connection' ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State") (citations omitted) (emphasis in original).
Coblentz comes under a Calder theory of jurisdiction in this case. The elements of the cause of action for intentional interference with business relations in Alabama are:
(1) The existence of a contract or business relation involving the plaintiff;
(2) Defendants' knowledge of the plaintiff's contract or business relation;
(3) Intentional interference by the defendants with the plaintiff's contract or business relation; and
(4) Damage to the plaintiff as a result of defendants' interference.
Lowder Realty, Inc. v. Odom, 495 So.2d 23, 25 (Ala.1986); Gross v. Lowder Realty Better Homes and Gardens, 494 So.2d 590, 597 (Ala.1986).[8] Coblentz contends that the Swedish defendants took deliberate, indeed well calculated, steps in forming a relationship with GMC which culminated in an agreement to enter into a joint venture to produce heavy trucks. Coblentz further contends that the Swedish defendants premised their participation in this project, in part, on GMC's agreement to terminate its existing heavy truck franchises, one of which belonged to Coblentz. Although the actions of these defendants in negotiating and forming the new company occurred outside Alabama, Coblentz avers that the Swedish defendants knew or should have known that their actions would disrupt Coblentz's business affairs in this state as a result of GMC's termination of its dealership.[9]
The evidence adduced by Coblentz, which the court must credit at this juncture in the case,[10] supports its assertion of contacts sufficient to justify the exercise of jurisdiction over the Swedish defendants by this court. The negotiation process between GMC and the various Volvo companies extended over several months before signature of the joint venture agreement. Within that time, each company collected and organized substantial amounts of information on their franchise holders, as well as the competing company's franchisees. This information was accessible to the Swedish defendants, and the evidence shows that these defendants made use of it in the negotiation process. A fair inference from this evidence is that the Swedish defendants knew of the existence of the various GMC heavy truck dealers across the nation and "targeted" this group as potential recipients of the effects of any joint venture. At some point the Swedish defendants decided that it would be necessary for GMC to terminate its relationship with its franchisees as a condition of entering into the joint venture. Coblentz's evidence allows a fair inference that at that point the Swedish defendants knew that this would result in the disruption of business of these GMC dealers and specifically intended this result. Since Coblentz fell *1371 within this targeted group, it may rely on Calder to establish the minimum contacts prong of the International Shoe test.
The Swedish defendants argue that they did not know, prior to signing the agreement leading to the joint venture, whether Coblentz would receive a franchise from the new company. The magistrate also focused on the speculative nature of the injury asserted by Coblentz, in light of the possibility that it would receive such a dealership. Coblentz's theory, however, is that the injury to its business relations occurred upon the cessation of its GMC franchise  it is at that point that the disruption took place, even if the magnitude of the injury would not become fully apparent until some later time. This appears to the court to be a viable legal theory.
The magistrate also found Calder inapplicable to the facts of this case on the grounds that the Swedish defendants did not target any specific resident within Alabama as a likely victim of their conduct. The evidence submitted by Coblentz after the magistrate's recommendation bears on this point, however, and it permits a reasonable inference that the Swedish defendants targeted their allegedly tortious actions toward GMC franchise holders in all states. The Swedish defendants had access to information on each member of this discrete group of entities, and may well be said to have "targeted" GMC's entire American network of heavy truck dealers. If by entering into the agreement with GMC the Swedish defendants thereby subjected themselves to suit in many, if not all, states of this country, this result obtains because they intentionally directed their activities toward resident dealers in each of those states. So long as a dealer can show under the appropriate standard of proof that it fell within this broad category of known targets, and that the defendants knew that the brunt of their activity would be felt by the dealer in its forum state, the dealer has shown minimum contacts under Calder. The court finds that Coblentz has met its burden at this stage of this case.[11]

B.
The court also concludes that its exercise of jurisdiction over the Swedish defendants complies with traditional notions of fair play and substantial justice, the second aspect of jurisdictional due process. In the typical intentional tort case, it is both fair and just to allow the victim of an alleged tort to call the tortfeasor to account in the victim's home forum. A contrary result would force injured parties to go to the alleged tortfeasor for redress even though, taking the victim's position as justified at the institution of suit, the tortfeasor has knowingly brought about the situation through its actions. See generally Burger King, 471 U.S. at 474-76, 105 S.Ct. at 2183-84. Given the presence of such equitable concerns in this case, the Swedish defendants must present a compelling case that other factors render jurisdiction in this court unreasonable notwithstanding minimum contacts. Cf. id. at 477, 105 S.Ct. at 2184-85; Asahi, 480 U.S. at 113-17, 107 S.Ct. at 1033-35. The Swedish defendants have presented no such case here.
The factors entering into an analysis of the fairness of jurisdiction over a given defendant include the burdens imposed on that defendant, the interests of the forum state in the ability to maintain suit therein, and the plaintiff's interest in obtaining relief. E.g., Asahi, 480 U.S. at 114-15, 107 S.Ct. at 1034. In this case, the interests of both Coblentz and Alabama in the vindication of Coblentz's alleged injury are clear and compelling. As stated, the evidence supports the conclusion that the Swedish defendants aimed their conduct at an Alabama citizen with resulting injury to the citizen in Alabama. While this court's exercise of jurisdiction over the Swedish defendants necessarily imposes significant burdens on them, it is clear as well from *1372 the evidence adduced by Coblentz that such burdens were, to some degree at least, anticipated. Indeed, the evidence relating to the creation of a "litigation fund" suggests that the Swedish defendants assumed that suits would arise in the various states of this country and prepared for this consequence of the joint venture agreement. This case does not involve an unsophisticated foreign defendant caught by surprise in an American forum in a dispute featuring attenuated connections to the laws or citizens of the forum. Cf. id. The court is aware of its obligation to exercise caution in comparing the burdens imposed on the Swedish defendants with the interests of Coblentz and Alabama. Id. 107 S.Ct. at 1035. The latter nonetheless override the former under the circumstances of this case.[12]

III.
Since the court finds that fair play and substantial justice will not be offended by its exercise of jurisdiction over the Swedish defendants in this action, it must reach their argument that service of process is defective. Coblentz served a summons and complaint on the corporate offices of each of these defendants through the use of registered mail. The clerk of the court mailed these documents on August 29, 1988. On September 12 and September 14, 1988, the clerk of the court received acknowledgment that these documents were received by the defendants.
The Swedish defendants correctly maintain that the validity of the service of process in this case is determined by the terms of the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 108 S.Ct. 2104, 2108, 100 L.Ed.2d 722 (1988). The Hague Service Convention contemplates service of summonses and complaints by mail directly on citizens of signatory nations, so long as that nation does not explicitly object. Hague Service Convention, Art. 10(a), 20 U.S.T. at 363. See Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir.1986); Shoei Kako Co. v. Superior Court, 33 Cal.App.3d 808, 821-22, 109 Cal.Rptr. 402, 411-12 (1973). Although it has implemented other means of service consistent with the Convention, Sweden has not stated any objection to the terms of article 10(a). Indeed, upon signing the Convention, Sweden noted that its judicial officers would not assist in the service of process under sections (b) and (c) of article 10, but made no comment at all on section (a).[13] Thus, Coblentz's service of process on the Swedish defendants does not run afoul of the Convention.
Nor does it run afoul of the Federal Rules of Civil Procedure. Special provisions apply to service of process on defendants in foreign countries. Rule 4(i)(1)(D) authorizes service on such defendants "by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." Coblentz employed this provision by serving process directly on the Swedish defendants through registered mail. The return receipts of service are part of the record, evidencing the fact that the Swedish defendants each received actual notice of this suit and received the summons and complaint.
The Swedish defendants argue that Coblentz has not complied with the terms of Fed.R.Civ.P. 4(c)(2)(C)(ii), which compels litigants *1373 to resort to personal service if they do not receive acknowledgment of service within 20 days. This contention is meritless for two reasons. First, Coblentz did not attempt service under Rule 4(c)(2)(C)(ii), which carries specific requirements on its use. The 20-day limitation on service by mail under Rule 4(c)(2)(C)(ii) does not apply to service by mail on defendants in foreign countries under Rule 4(i)(1)(D). That section of Rule 4 has its own provision relating to proof of service.
(2) Return. Proof of service may be made as prescribed by subdivision (g) of this rule, or by the law of the foreign country, or by order of the court. When service is made pursuant to subparagraph (1)(D) of this subdivision, proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court.
Fed.R.Civ.P. 4(i)(2). The return receipts without question constitute satisfactory proof of service on the Swedish defendants. Cf. Fox v. Regie Nationale Des Usines Renault, 103 F.R.D. 453, 455 (W.D.Tenn. 1984) (finding proof of service under Rule 4(i)(2) without any return receipts, based on defendant's filing of an answer in action); Puerto Rico Maritime Shipping Authority v. Almogy, 510 F.Supp. 873, 878-79 (S.D. N.Y.1981) (finding proof of service based on reasonable inferences from circumstantial evidence).
Secondly, even if Rule 4(c)(2)(C)(ii) does apply in this case, the court received acknowledgment of receipt of the summonses and complaints from the offices of the Swedish defendants within 14 days for one defendant and 16 days for the other from the date of mailing. Thus even under that rule service is satisfactory. The Swedish defendants' challenge to service of process must therefore be rejected.
For the reasons given above, it is ORDERED:
(1) That the recommendation of the magistrate, entered September 30, 1988, be and it is hereby not accepted; and
(2) That the motions to quash and to dismiss for lack of personal jurisdiction, filed by defendants Aktiebolaget Volvo and Volvo Lastvagnar AB on July 26, 1988, be and they are hereby denied.
NOTES
[1] See Arthur Glick Truck Sales, Inc. v. General Motors Corp., 865 F.2d 494 (2d Cir.1989); Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100 (3d Cir.1988); General Motors Corp. v. Gallo GMC Truck Sales Inc., 711 F.Supp. 810 (D.N.J.1989); Maier-Schule GMC, Inc. v. General Motors Corp., No. CIV-87-1514E (W.D.N.Y. Nov. 30, 1988) (1988 WL 128602); Wisconsin Truck Center, Inc. v. Volvo White Truck Corp., 692 F.Supp. 1010 (W.D.Wis.1988); Mid-State Truck Service, Inc. v. General Motors Corp., Civil Action No. 87-C995-S (W.D.Wis. March 28, 1988) (1988 WL 148432); C-B Kenworth, Inc. v. General Motors Corp., 706 F.Supp. 952 (D.Me.1988); C-B Kenworth, Inc. v. General Motors Corp., 675 F.Supp. 686 (D.Me.1987); C-B Kenworth, Inc. v. General Motors Corp., 118 F.R.D 14 (D.Me.1987); General GMC, Inc. v. Volvo White Truck Corp., Civil Action No. 87-2643-Z (D.Mass. Nov. 19, 1987) (1987 WL 30965); C. Earl Brown, Inc. v. Commonwealth of Pennsylvania, ___ Pa.Commw. ___, 555 A.2d 314 (1989).

None of the reported cases in this litigation family involves personal jurisdiction questions similar to those discussed in this order. In the Maine litigation, the plaintiff agreed to the dismissal of Aktiebolaget Volvo from the suit, apparently in light of the district court's view that the company "ha[d] no connection with the joint venture with GMC or with Plaintiff's cause of action." C.B. Kenworth, Inc., 118 F.R.D. at 16 n. 2.
[2] Taking his cue from Delong Equipment Co. v. Washington Mills Abrasive, 840 F.2d 843 (11th Cir.1988), the magistrate relied upon Coblentz's version of the facts. Although he conducted a hearing, the hearing consisted mainly of oral argument and the bulk of the evidence he received was by affidavits and depositions.

The court has also relied on Coblentz's version of the facts. In Delong, the appellate court explained that, in the context of a motion challenging personal jurisdiction "in which no evidentiary hearing is held, the plaintiff must present only a prima facie showing of ... personal jurisdiction." Id. at 845. The facts as alleged in the complaint must be taken as true to the extent they are uncontroverted by the defendants' evidence, and, to the extent they are controverted, the plaintiff's version should be given greater weight, with reasonable inferences made in favor of the plaintiff. Id. This is particularly required when, as is true in this case, the jurisdictional issues are intertwined with the merits of the case. Id.; see also Bracewell v. Nicholson Air Services, Inc., 748 F.2d 1499, 1504 & n. 2 (11th Cir.1984).
[3] The joint venture company is known as Volvo GM Heavy Truck Corporation.
[4] The Volvo companies include, in addition to the Swedish defendants, Volvo White Truck Corporation and Volvo North America Corporation.
[5] Coblentz's claims against GMC and the other Volvo defendants include, in addition to the tort of intentional interference with business relations, breach of contract, fraud and violations of state and federal motor vehicle franchise laws. 15 U.S.C.A. §§ 1221, et seq.; 1975 Ala.Code §§ 8-20-1, et seq.
[6] It appears from the complaint as amended that Coblentz asserts jurisdiction over all the defendants on the basis of diversity. In addition, Coblentz appears to assert jurisdiction over GMC on the basis of the jurisdictional provision of the Automobile Dealers' Day in Court Act. 15 U.S.C.A. § 1222.
[7] The Calder approach is in line with the law of the former Fifth Circuit, which is binding precedent on this court. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc). In Simon v. United States, 644 F.2d 490, 499 (5th Cir. May 7, 1981), the former Fifth Circuit found sufficient minimum contacts in a case involving the wrongful arrest and imprisonment of a Louisiana plaintiff subsequent to the issuance of a defective subpoena by a federal court in Georgia. The Louisiana plaintiff sued, among other defendants, the Tennessee lawyer who had intentionally misaddressed the subpoena and then informed the Georgia court that plaintiff had been served, when in fact plaintiff had not. The Fifth Circuit found that although the defendant never set foot in Louisiana, his alleged intentional tortious acts had a direct and substantial result in that state  that is, that the acts were specifically directed at a defendant in Louisiana.

Similarly, in Edwards v. Associated Press, 512 F.2d 258 (5th Cir.1975), the Fifth Circuit concluded that a Mississippi court could constitutionally exercise personal jurisdiction over a nonresident publisher who purposely directed an allegedly libelous story toward Mississippi readers. The court colorfully noted that AP's actions were "purposefully and specifically aimed at Mississippi, as surely as if the proverbial gunman had stood in Alabama and fired into a crowd in Mississippi." Id. at 267.
The new Fifth has continued in the same vein. In Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003 (5th Cir.1982), a Mississippi corporation sued in tort two California corporations and a California individual in a Mississippi court, contending that the California defendants conspired to cheat and defraud the Mississippi corporation of amounts due on some unpaid invoices. After concluding that the complaint of the Mississippi corporation stated a cause of action, the court of appeals observed that
The damages caused by the tort-caused breach of this ... Mississippi-centered contract resulted in the nonpayment in Mississippi of amounts due there. Under these circumstances, the due process requirements of sufficient contact with Mississippi and foreseeable involvement with its law are met by the intentional acts of the non-resident defendants that caused a breach of a Mississippi-centered contract and resultant damage in Mississippi.
Id. at 1012. See also Candy H. v. Redemption Ranch, Inc., 563 F.Supp. 505, 512-513 (M.D.Ala. 1983).
Moreover, since Calder was handed down in 1984, other courts have read it along the same lines as has this court. Brainerd v. Governors of the University of Alberta, 873 F.2d 1257 (9th Cir.1989); Sinatra v. National Enquirer, Inc., 854 F.2d 1191 (9th Cir.1988); Southmark Corporation v. Life Investors, Inc., 851 F.2d 763 (5th Cir.1988); Wallace v. Herron, 778 F.2d 391 (7th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); Keelean v. Central Bank of the South, 544 So.2d 153 (Ala.1989); Duke v. Young, 496 So.2d 37 (Ala.1986).
[8] See generally Campbell, Interference with Business Relations: the Unified Tort since Gross v. Lowder Realty, 50 Ala.Law. 86 (1989). The defendant may raise justification as an affirmative defense. Odom, 495 So.2d at 25.
[9] The fact that the Swedish defendants have never physically entered Alabama, while relevant, is not determinative of the jurisdictional issue. Relying on Calder, the Court in Burger King observed that "So long as a commercial actor's efforts are `purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." 471 U.S. at 476, 105 S.Ct. at 2184.
[10] See note 2, supra.
[11] The court's order today does not prevent the Swedish defendants from reasserting their jurisdictional argument at summary judgment or even after trial, should discovery uncover additional evidence to support their position. See Bracewell v. Nicholson Air Services, Inc., 748 F.2d 1499, 1504 (11th Cir.1984).
[12] As noted above, the court's rationale in this case may well apply to plaintiffs in many of the various states. This result does not deter the court from concluding that exercising jurisdiction over the Swedish defendants in this case is fair and just. Even if the Swedish defendants did subject themselves to virtual nationwide jurisdiction relating to suits arising from the creation of the joint venture company with GMC, their liability for suit would nonetheless appear to be proportional to the magnitude of the effects of their intentional actions in the various fora  and therefore consistent with traditional concepts of fair play and substantial justice.
[13] The Swedish defendants argue that Sweden has not consented to the terms of article 10(a). The flaw in this argument is that the article does not require affirmative consent but instead becomes effective "[p]rovided the State of destination does not object...."