**John HAFEN and John Reed, Plaintiffs,**

v.

**Sid STREBECK, Defendants.**

**No. 2:04 CV 507DAK.**

United States District Court, D. Utah, Central Division.

Oct. 4, 2004.

Matthew N. Evans, Esq., Holme Roberts & Owen LLP, Salt Lake City, UT, for Plaintiffs.

Sean N. Egan, Esq., Kearns Bldg, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendant Sid Strebeck's Motion to Dismiss. A hearing on the motion was held on September 22, 2004. At the hearing, Defendant was represented by Sean N. Egan and Plaintiffs were represented by Matthew N. Evans. The court took the matter under advisement. The court has considered carefully the memoranda submitted by the parties as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

According to Plaintiffs' Complaint, the acts that form the basis of this action involve conversations made via telephone by Defendant Strebeck to Plaintiff Hafen, while Hafen resided in Utah, and correspondence sent by Strebeck to Hafen in Utah. Plaintiffs Hafen and Reed have an ownership interest in software marketed under the name EV4 ("Software"). Strebeck procured physical possession of the Software by foreclosing on assets of a company called Versidata. Versidata had previously acquired a license to use the Software from Hafen and Reed. Versidata owed Hafen and Reed in excess of $188,000 for the use of the Software.

John Reed is a resident of Washington. John Hafen is a resident of Provo, Utah. However, it is unrebutted that at times relevant to this action, he also resided in

the State of Washington. Strebeck is a resident of New Mexico, and the Software is physically located in Oklahoma.

On September 13, 2002, Strebeck telephoned Hafen, who was in Provo, Utah at the time, to talk about the Software. During this conversation, Strebeck allegedly represented that he had a million dollar deal with a company called Reynolds & Reynolds to further develop the Software. Strebeck also allegedly represented that he was going to get a $500,000 investment from Dealers Diversified for marketing the Software to car dealers across the country, which could generate millions of dollars in revenues. Plaintiffs allege that Strebeck made these representations in order to induce Hafen and Reed to forego repossessing the Software.

In addition, Plaintiffs claim that Strebeck told Hafen that he would either pay Plaintiffs in full the money owed by Versidata for use of the Software, cash them both out of their rights to the Software, and/or provide them with an interest in the profits obtained from the use of the Software. At that time, the Software had a value of approximately $1,000,000.

In reliance on Strebeck's alleged representations in the September 13, 2002 conversation, which were confirmed in a follow up letter from Strebeck to Hafen, Plaintiffs refrained from repossessing the Software and permitted Strebeck to continue to use the Software. Plaintiffs contend that they have since learned that Strebeck did not have a deal with Reynolds & Reynolds, he did not have a deal with Dealers Diversified, and he never intended to satisfy the obligations to them.

Plaintiffs allege that in subsequent conversations directed to Hafen in Utah, Strebeck retracted his promises and refused to satisfy the obligations owed to them for the Software. Plaintiffs claim they have not received compensation from Strebeck for allowing him to use the Software.

Plaintiffs further allege that because of the passage of time and the failure to update the Software, the Software has lost most of its value.

Plaintiffs' Complaint alleges three causes of action against Strebeck: (1) intentional misrepresentation based upon Strebeck's knowingly false representations that induced Plaintiffs not to repossess their rights to the Software; (2) negligent misrepresentation based on Strebeck's reckless misrepresentations which caused Plaintiffs' not to exercise their rights; and (3) breach of fiduciary duty based on Strebeck's superior knowledge about the facts relating to the Software and his intended uses of the Software and his failure to act with reasonable care or in a manner that served the best interests of Plaintiff with regard to the Software.

## DISCUSSION

Strebeck brings the present motion to dismiss arguing that this court lacks personal jurisdiction over him. Alternatively, if the court finds that it does have jurisdiction, Defendant moves for dismissal of each of Plaintiffs' claims, arguing: (1) Plaintiffs have not pled fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure; (2) Plaintiffs have not adequately plead negligent misrepresentation and such claim is barred by the economic loss rule; and (3) Plaintiff's breach of fiduciary duty claim fails because Defendant has no such duty as a matter of Utah law.

### I. Personal Jurisdiction

When a court's jurisdiction is contested, the plaintiff "bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998); *Electronic Realty Assoc. v. Vaughan*, 897 F.Supp. 521, 521

(D. Kan.1995) (citing *McNutt v. General Motors,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). However, in the preliminary stages of litigation, the plaintiff's burden is only to establish a prima facie case that jurisdiction exists. *Electronic Realty,* 897 F.Supp. at 521. All factual disputes are resolved in favor of the plaintiff when determining the sufficiency of this showing. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995).

It is well settled that "[t]o obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.1999). There is no claim in this case that there is general jurisdiction over Defendant in the State of Utah. Therefore, this court must determine whether specific jurisdiction exists over Defendant under the facts of this case.

"[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'" *National Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.,* 902 F.Supp. 1459, 1465 (D.Utah 1995) (citations omitted). Plaintiffs' Complaint alleges that Strebeck "transacted business" and "caused an injury" in Utah under Utah's long-arm statute based on Strebeck's telephone conversations with Hafen, who was in Provo, Utah at the time, and Strebeck's correspondence directed to Hafen in Utah. Utah Code Ann. § 78–27–24(1), (3) (2002 & Supp.2003).

Utah's long-arm statute provides, in pertinent, part as follows:

> Any person ... who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state;
>
> .    .    .    .    .
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty ...

*Id.*

The words "transacting business" means activities of a non-resident person in this state which "affect persons or business within the state." *Id.* § 78–27–23(2) (2002). These words are liberally and expansively interpreted such that "a person may transact business within the state despite an absence of physical presence in Utah." *Nova Mud Corp. v. Fletcher,* 648 F.Supp. 1123, 1126 (D.Utah 1986). In fact, the entire Utah long-arm statute is intended to be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78–27–22; *see also Starways, Inc. v. Curry,* 980 P.2d 204, 206 (Utah 1999). Accordingly, the Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.,* 969 P.2d 430, 433 (Utah 1998). Therefore, the court will begin its analysis by determining whether the exercise of personal jurisdiction over Defendant under the facts of this case meets federal due process standards.

Under due process standards, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citations omitted). The "minimum contacts" necessary for specific personal jurisdiction are established " 'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.' " *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Strebeck argues that his telephone calls and correspondence to Hafen in Utah are insufficient to establish the minimum contacts required under the Due Process Clause. "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir.1995). However, "telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." *Rambo v. American Southern In. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988) (citations omitted). "[T]he exercise of jurisdiction depends on the *nature* of those contacts." *Id.* "The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail [himself] of the privilege of conducting activities within the forum State.' " *Id.* at 1419.

The cases make clear that it is the quality or nature of the communications that matter, not the quantity. In this case, Plaintiffs allege not only that there were several telephone calls between Strebeck and Hafen while Hafen was in Utah, but that the statements made during those telephone calls to Utah form the basis of their claims. Plaintiffs allege that Strebeck made intentional misrepresentations in his telephone conversations to Hafen that improperly induced Plaintiffs to forego repossessing their interests in the Software.

In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1983), the Supreme Court held that a defendant's intentional tortious acts in Florida were sufficient to establish minimum contacts in California because the actions were aimed at California, and most of the harm to plaintiff's reputation and career occurred in California. *Id.* at 790, 104 S.Ct. 1482. However, cases since *Calder* have held that while an intentional tort suggests purposeful availment, it is only one factor in creating minimum contacts and "the mere allegation of an intentional tort does not create jurisdiction in the plaintiff's home forum." *Wallace v. Herron,* 778 F.2d 391, 394–95 (7th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986) (cited in *Far West,* 46 F.3d at 1079).

The Tenth Circuit has reviewed post-*Calder* decisions and concluded that "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West,* 46 F.3d at 1079. In determining purposeful availment, the court must "undertake a particularized inquiry" and examine " 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.' " *Id.* The court should also "examine the contacts created

by the out-of-state defendant in committing the alleged tort." *Id.* at 1079–80.

In conducting the particularized inquiry for purposes of purposeful availment in this case, it is undisputed that there was no contract between the parties. It is unclear where the contract that the parties were negotiating would have been executed or performed. Plaintiffs do not dispute that Reed told Strebeck to contact Hafen. They also do not dispute that although some negotiations were obviously occurring between Hafen and Strebeck while Hafen was in Utah, negotiations were also taking place in other jurisdictions.

Strebeck argues that even though he communicated with Hafen in Utah, the only contact with Utah is the fact that Hafen resides in the state and such a contact is mere happenstance. In *Reynolds,* the court recognized that the choice of a residence is a unilateral one that will not allow a plaintiff to establish jurisdiction over a non-forum defendant absent other availing factors. *Id.* at 1118–19. The *Reynolds* court, which was addressing the intentional tort of defamation, distinguished the defamation claim in its case from the defamatory publication in *Calder* because the alleged defamatory press release was not published or circulated in the forum state.

Unlike the contacts in *Reynolds,* however, in this case, Plaintiffs' Complaint specifically identifies one allegedly fraudulent telephone call Strebeck placed to Hafen in Utah, states that Strebeck made other fraudulent calls to Hafen in Utah, and alleges that Strebeck sent a letter to Hafen in Utah confirming the alleged misrepresentations that he made in the telephone calls. These contacts form the basis of Plaintiffs claims.

In stating that courts should examine contacts created by the nonresident defendant in committing the alleged tort, the Tenth Circuit cited to several post-*Calder* cases which, although coming to different holdings, focused on the nature of the contacts. *See, e.g., Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110 (6th Cir.), *cert. denied,* 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994); *Coblentz GMC/Freightliner Inc. v. General Motors Corp.,* 724 F.Supp. 1364 (M.D.Ala.1989).

In *Coblentz GMC/Freightliner Inc. v. General Motors Corp.,* 724 F.Supp. 1364 (M.D.Ala.1989), one of the cases cited by the Tenth Circuit, the court stated that "when a defendant intentionally takes some action with the knowledge that the result will be harm to a specific victim in another state, the picture involves more than mere foreseeability or the likelihood that fortuitous and undirected conduct will have an effect in that state." *Id.* at 1368. The court further stated that "[w]hen the conduct is intentional and is directed at a victim in another state, the defendant may be held to have expected its conduct to have an effect in that state, and further to have expected that the victim will bring suit for redress there." *Id.*

■ Construing the allegations of the Complaint in favor of Plaintiff as this court must do, although Strebeck may not have sought out Hafen in Utah, he knew when he made the alleged misrepresentations to Hafen in Utah that he was directing his conduct to a specific person in this state. He further knew that he was making alleged misrepresentations that would induce Hafen not to pursue his rightful remedies, and that such action would cause Hafen harm. Because Strebeck's representations in the telephone calls form the basis of Plaintiffs' claims, this court concludes that they establish the requisite minimum contacts to satisfy due process.

If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends

'traditional notions of fair play and substantial justice.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). Both the United States Supreme Court and the Utah Supreme Court have recognized that the central inquiry in making such a determination is "the relationship of the defendant, the forum, and the litigation to each other." *Mallory Eng'g v. Ted R. Brown & Assoc.*, 618 P.2d 1004, 1007 (1980); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). "In *Keeton*, the Court further indicated that the 'fairness' of requiring a defendant who is not a resident of the forum state to appear in the forum depends in part on the expressed public policy interest of the forum state, noting the particular interest a forum state in connection with tort claims." *Berrett v. Life Ins. Co. of Southwest*, 623 F.Supp. 946, 951 (D.Utah 1985).

Strebeck again argues that Utah's connection to the case is a mere fortuity and there is no indication that Utah played any role in the party's past dealing or that it would have any role in their continuing relationship had any deal come to fruition. Strebeck asserts it would not comport with notions of fair play to require him to defend himself in a forum in which he has only a slight connection. Plaintiffs, in contrast, argue that the balance of equities weigh in favor of finding jurisdiction over Defendant in Utah. Plaintiffs assert that Plaintiff is located in an adjoining state, has obtained counsel here, and Plaintiffs wrongful acts were directed to this state. Plaintiffs contend that Strebeck should not be allowed to make harmful misrepresentations to a Utah resident without the burden of answering for his wrongful acts in this state.

In assessing notions of fair play and substantial justice, this court recognizes that Utah residents should be afforded a full opportunity to address injuries perpetrated on them by out-of-state residents in Utah courts. There is a substantial and fundamental link between Plaintiff's claims and Strebeck's contacts with Utah. The claims arise directly out of his contacts with Hafen in Utah, wherein Strebeck allegedly made misrepresentations to Hafen in order to induce Plaintiffs to forego their right to foreclose on the Software. But for the fact of Strebeck's representations via telephone and letter to Utah, there would be no cause of action. Moreover, Strebeck was capable of conducting business with Hafen in Utah without undue hardship. Therefore, the court concludes that the exercise of jurisdiction over Defendant in this court comports with traditional notions of fair play and substantial justice. Based on the above reasoning, the court concludes that jurisdiction is proper in this court under due process standards and Utah's long-arm statute. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is denied.

In the event that this court found jurisdiction over Strebeck, Strebeck also brought a motion to dismiss each of Plaintiffs' claims. The court will address each claim in turn.

## II. Claim 1: Intentional Misrepresentation

Strebeck argues that Plaintiffs have not pled their fraud claim with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) "requires a plaintiff to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence there-

**1264**

of." *Karacand v. Edwards*, 53 F.Supp.2d 1236, 1241 (D.Utah 1999).

Strebeck contends that Plaintiffs allegations do not specify a time, a place, or the content of any fraudulent representation or omission and that the consequences of Strebeck's alleged fraud are stated in only conclusory fashion. Strebeck also asserts that Plaintiffs have failed to clearly identify a presently existing material fact which Strebeck allegedly misrepresented or omitted. Therefore, Strebeck argues that Plaintiffs have failed to plead the necessary elements of a fraud claim. *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003).

Although Plaintiffs have not listed all of the dates and times of each telephone call between the parties, they have alleged one date that Strebeck made a telephone call, that the call was made to Hafen, that the content of the calls included misrepresentations regarding deals that Strebeck had not really entered into, and that he made such representations to induce Plaintiffs not to foreclose on their rights to the Software. Plaintiffs also allege that their rights in the Software lost value because of the delay caused by Defendant's alleged misrepresentations. The allegation that Strebeck stated he had entered into deals with certain parties regarding the software when he allegedly had not is enough to state the misrepresentation of a presently existing fact.

■ Although Plaintiffs state the time, place, and content for only one telephone call, it is enough to state a claim for fraud under Rule 9(b) with respect to that telephone call. To the extent that there is other conduct between the parties or other dealings related to the fraudulent representations made in that call, Plaintiffs need not plead it with particularity unless it contains additional fraudulent representations. If there are other fraudulent representations that Plaintiffs intend to rely

upon in this case, they should timely amend their Complaint to provide Defendant notice. However, the court concludes that Plaintiffs' Complaint sets forth the time, place, and representations made by Strebeck sufficiently under Rule 9(b) to state a claim of fraud. Accordingly, Defendant's motion to dismiss Plaintiffs' first claim is denied.

### III. Claim 2: Negligent Misrepresentation

Strebeck contends that Plaintiffs have failed to allege the necessary elements of a negligent misrepresentation claim under Utah law and that the claim is barred by the economic loss rule. Utah acknowledges the tort of negligent misrepresentation, which "provides that a party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact." *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986); *Klinger v. Kightly*, 889 P.2d 1372, 1378 (Utah App.1995).

Although Plaintiffs have adequately pled many of these elements and some reasonableness determinations appear to be questions of fact that would be inappropriate to rule on at a motion to dismiss stage, the initial inquiry for this court to make is whether Strebeck owes a duty to Plaintiffs. In order to state any claim of negligence, the defendant must owe a duty to Plaintiff. Plaintiffs allege in their Complaint that Strebeck had a duty to refrain from making statements that he knew or should have known were not true.

"The issue of whether a duty exists is entirely a question of law to be determined by the court." *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). Courts consider many factors, none of which is dispositive, in determining when a duty runs between parties. *See e.g., Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 60 (Utah 1986) (foreseeability); *Christenson v. Commonwealth Land Title Ins. Co.*, 666 P.2d 302, 305 (Utah 1983) (privity of contract); *Ellis v. Hale*, 13 Utah 2d 279, 373 P.2d 382, 384–85 (1962) (statutory obligations); *House v. Armour of Am., Inc.*, 886 P.2d 542, 549–50 (Utah App.1994) (whether user possesses special knowledge, sophistication, or expertise). Particularly in the realm of tort law, "[t]he duty concept ... is a policy determination." *DeBry*, 835 P.2d at 1003–04 ("Duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.") (citations omitted).

This case presents the issue of whether one commercial entity has a duty to refrain from making negligent misrepresentations to another in the negotiation of a contract. While Utah cases have discussed circumstances where certain defendants may owe a duty to refrain from making negligent misrepresentations to certain plaintiffs, this court has not found a case addressing negligent misrepresentation in the context of two commercial entities during negotiations of a contract.

In *Safeco Insurance Co. v. Dain Bosworth, Inc.*, 531 N.W.2d 867, 870 (Minn. App.1995), the Minnesota Court of Appeals faced the same situations with regard to the state of the law in Minnesota. In looking to other jurisdictions for guidance, the court held that "where adversarial parties negotiate at arm's length, there is no duty imposed such that a party could be liable for negligent representations. In these situations, the injured party's remedy is to sue either in contract or to sue for intentional misrepresentation." *Id.* The court concluded that the defendant did not owe Plaintiff a duty beyond the duty of honesty. *Id.* Therefore, although there is an inherent duty to be honest and not state intentional misrepresentations, there is no similar duty with respect to negligent misrepresentations when the parties are dealing at arm's length.

The Minnesota court relied on cases from the states of Iowa, Oregon, and Illinois. These cases "distinguish misrepresentations made by persons engaged in the business or profession of supplying guidance to others from misrepresentations made during commercial transactions where the parties are dealing at arm's length." *Id.* (citing *Freeman v. Ernst & Young*, 516 N.W.2d 835, 838 (Iowa 1994); *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or. 149, 843 P.2d 890, 896–97 (1992) (professionals such as attorneys, engineers, architects, real estate brokers, and primary insurers owe a duty for purposes of negligent misrepresentation, but "adversarial parties. negotiating at arm's length to further their own economic interests" do not owe such a duty); *Moorman Mfg. v. National Tank*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 452 (1982) (limiting actions for negligent misrepresentation to situations where "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent misrepresentations"); Alfred Hill, Damages for Innocent Misrepresentation, 73 Colum.L.Rev. 679, 685–86 (1973)). The Eighth Circuit Court of Appeals, applying Iowa law, has also concluded that parties to a business merger deal do not have a duty to one another for purposes of negligent misrepresentation. *See Budget Mktg., Inc. v. Centronics Corp.*, 927 F.2d 421, 428–29 (8th Cir.1991).

■ This court finds that Utah courts would adopt a similar approach. Therefore, the court concludes that because the parties were both commercial entities negotiating a deal at arm's length, Strebeck did not have a duty to Plaintiffs with respect to negligent misrepresentations, only intentional misrepresentations.

■ Strebeck further argues that Plaintiffs' negligent misrepresentation claim is barred by the economic loss rule. Although the court has already concluded that Plaintiffs have not stated a claim of negligent misrepresentation, the court concludes that based on that lack of duty, the claim would also be precluded by the economic loss rule. The economic loss rule prevents a party from claiming economic damages " 'in negligence absent physical property damage or bodily injury.' " *SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assoc.*, 28 P.3d 669, 680 (Utah 2001). The economic loss rule under Utah law is an evolving doctrine. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Id.* The Utah Supreme Court has expressly adopted the interpretation of the economic loss rule provided by the Colorado Supreme Court in *Grynberg v. Agric. Tech. Inc.*, 10 P.3d 1267, 1269 (Colo.2000), which states:

> "The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached. Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."

*Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002). Therefore, "[w]hen an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.' " *Id.* (citation omitted).

Although the rule appears to have begun as only a means to deter parties to a contract from seeking tort remedies in addition to the remedies available under their contract, cases from the Utah Supreme Court have also applied the economic loss rule to parties who were not parties to a contract. In *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182 (Utah 1996), the court barred condominium homeowners from collecting economic damages from contractors for faulty construction in the plumbing and mechanical systems of the building. *Id.* at 1192. The homeowners were not parties to any of the construction contracts and had no enforceable rights as third-party beneficiaries. *Id.* at 1187. However, the court barred their claim under the economic loss rule, finding that any other holding would "impose the [homeowners'] economic expectations upon parties whom the [homeowners] did not know and with whom they did not deal and upon contracts to which they were not a party." *Id.* at 1192.

In *Fennell v. Green*, 77 P.3d 339, 344 (Utah Ct.App.2003), the Utah Court of Appeals barred a homeowner's claim against a developer for negligent misrepresentation. The homeowner did not have a contract with the developer, and the court found that "the economic loss rule applies to prevent the imposition of 'economic expectations' on non-contracting parties." *Id.* The *Fennell* court factually distinguished *Hermansen* on the grounds that the defendant in *Hermansen* had an inde-

pendent duty to plaintiffs as real estate professionals.

In this case, there is no contract between the parties. Plaintiffs' negligent misrepresentation claim arises out of the parties' negotiations of a contract that was never executed. Plaintiffs allege in their Complaint that Strebeck had a duty to refrain from making statements that he knew or should have known were not true. As the court found above, however, there is no duty with respect to negligent misrepresentation when two commercial entities are engaged in arm's-length contract negotiations. Plaintiffs also allege a separate cause of action claiming that Defendant had a fiduciary duty to them. However, as will be discussed below, the court does not find that a fiduciary duty exists between parties negotiating a deal at arms-length. *See Gold Standard, Inc. v. Getty Oil Co.,* 915 P.2d 1060, 1064 (Utah 1996). Because Strebeck had no independent duty to Plaintiffs, Plaintiffs negligent misrepresentation claim is also barred by the economic loss rule because it prevents the imposition of economic expectations on non-contracting parties. Therefore, the court grants Defendant's motion to dismiss Plaintiff's claim for negligent misrepresentation.

## IV. Claim 3: Fiduciary Duty

Strebeck argues that he had no fiduciary duty as a matter of Utah law. A fiduciary or confidential relationship will be found under Utah law only "when one party, having gained the trust and confidence of another, exercises extraordinary influence over the other party." *Gold Standard Inc. v. Getty Oil Co.,* 915 P.2d 1060, 1064 (Utah 1996). When "the parties deal at arm's length or in an adversarial relationship, no fiduciary relationship can be said to exist." *Id.*

Strebeck contends that the nature of his relationship with Plaintiffs was only nego-

tiations to enter into a contract. Plaintiffs argue that Strebeck's promise to them regarding an interest in the profits obtained from the use of the Software was, in essence, offering a joint venture arrangement. Plaintiffs contend that as a result of this relationship, Strebeck owed a duty to Plaintiffs to act with reasonable care, in good faith, and in a manner that would serve the interest of Plaintiffs with regard to the Software.

Typically, "fiduciary obligations inhere ... where two entities are engaged in a joint venture where they share profits and risks or where the entities jointly own or control assets." *KBQ, Inc. v. du Pont,* 6 F.Supp.2d 94, 100 (D.Mass.1998). However, Plaintiffs acknowledge that the nature of the relationship was not contractual. Under Utah law, a joint venture requires the existence of an agreement. *Bassett v. Baker,* 530 P.2d 1, 2 (Utah 1974). It is undisputed that no agreement was ever reached between the parties. The parties were merely negotiating an agreement at arm's-length to become a joint venture. Therefore, the court concludes that no fiduciary relationship existed between the parties during the period of negotiations. Accordingly, Defendant's motion to dismiss Plaintiffs' claim for breach of fiduciary duty is granted.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. Specifically, Defendant's motion to dismiss based on lack of personal jurisdiction is DENIED; Defendant's Motion to Dismiss Plaintiffs' intentional misrepresentation claim is DENIED; Defendant's Motion to Dismiss Plaintiffs' negligent misrepresentation claim is GRANTED; and Defen-

dant's Motion to Dismiss Plaintiffs' breach of fiduciary duty is GRANTED.